[No. 36378. Department One. October 24, 1963.]

PEND OREILLE MINES AND METALS COMPANY, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES *et al.*, *Respondents.**

*Reported in 385 P. (2d) 856.

*Witherspoon, Kelley, Davenport & Toole,* by *E. Glenn Harmon,* for appellant.

*The Attorney General* and *Andrew J. Young, Assistant,* for respondents.

OTT, C. J.—April 22, 1959, Michael R. Smith, aged 21, an applicant for employment by the Pend Oreille Mines and Metals Company, was examined for his physical fitness by the company doctor, Frank R. Hammerstrom. He told the doctor that, during his service in the United States Air Force, he had suffered a back injury which was not serious, but that he had a "tender back." The doctor's examination, after the applicant had performed some 20 back bends, did not reveal any present disability. He was accepted as physically fit for employment in the mine. His "grizzlyman" duties required him to break large rocks from the mine dump, with a 12-pound rock hammer, into sizes small enough to fall through the grizzly rails into the pit below.

June 22, 1959, to avoid being struck by a large falling boulder from the mine dump while working at the grizzly on the surface level, he lost his footing on the wet rails and fell. He complained to the company's safety engineer of pain in his lower back. Upon examination, the engineer could see no bruise or visible appearance of injury. Smith was able to lift his 12-pound hammer, which had fallen into the pit, and also a 75-pound aluminum ladder.

At the request of the mine superintendent, Smith was taken to Dr. Hammerstrom for examination. The doctor found tenderness and "contusion and sprain of the upper and lower lumbar spine, most severe pain in the area of L3." The doctor ordered a lumbosacral support for Smith's back. The doctor or his nurse gave Smith physical therapy treatments nearly every day until July 13, 1959.

December 16, 1959, the supervisor of industrial insurance allowed Smith's claim for his injuries thus sustained. The employer appealed to the Board of Industrial Insurance Appeals. The board's findings and decision sustained the order of the supervisor.

From a judgment of the superior court, sitting without a jury, which sustained the board's findings and decision, the employer has appealed.

Appellant first assigns error to the court's ruling that "there was sufficient medical evidence to establish (1) that claimant had been injured, and (2) that there was a causal relation between the claimed industrial accident and the alleged injury."

■ As to (1), Smith's testimony that he had fallen during the course of his employment was believed by the supervisor, the board, and the trial court. Lay testimony alone is sufficient to establish the factual incident of a fall.

RCW 51.52.115 provided, *inter alia*:

". . . The hearing in the superior court shall be de novo, . . . In all court proceedings under or pursuant to this title the findings and decision of the board shall be prima facie correct and the burden of proof shall be upon the party attacking the same. . . ."

RCW 51.52.140 provided in part: ". . . Appeal shall lie from the judgment of the superior court as in other civil cases. . . ." (The 1961 amendment did not change the quoted provisions of these statutes.)

■ In civil cases, our review of factual issues is limited to an examination of the record for substantial evidence to support the findings of the fact-finding tribunals. *Rice v. Johnson*, 62 Wn. (2d) 591, 592, 384 P. (2d) 383 (1963), and case cited. There is substantial evidence in this record to support the finding that Smith fell and was injured during the course of his employment.

As to (2), the appellant contends that there is insufficient evidence to sustain the trial court's finding that a compensable injury resulted from the fall. In this regard, Dr. Hammerstrom testified:

"Q. I take it then, Doctor, he came in seeking treatment for a back injury on the 22nd of June, 1959? A. Yes. Q. Did he give you any history as to how the injury occurred, Doctor? A. It would be the same history as what is on the accident report, which he also gave to Mrs. Dey who works in the office. Q. Refreshing your memory from the report, can you recall this is the history he gave you?

A. That would be the history. Q. What would be that history, briefly, Doctor? A. He stated he was breaking rock on the grizzly and jumped to avoid a large rock and fell—injuring the lower part of my back. Q. And, generally, what were his complaints at the time you saw him on June 22nd, Doctor? A. He had a pain in the area of the 3rd lumbar vertebra. Q. In relation to the belt line, where is that area, approximately? A. I would say it probably is about one vertebra above the belt. Q. Approximately an inch or two inches? A. About an inch above the belt, above the belt line. Q. Did you conduct an examination, a physical examination of Mr. Smith on June 22, 1959, Doctor? A.Yes. Q. Was that a complete physical, Doctor? Did you have him undressed to examine him? A. I always have their back bare at the time of an examination for a back injury of any kind. Q. As a result of that examination, Doctor, what were your findings, if any? A. I considered it more of a sprain. I cannot say there was anything visible, actually showing. Q. Well, was anything demonstrable by palpation or anything of that sort? A. There was tenderness. Q. As a result of that examination, Doctor, what was your diagnosis? A. I called it contusion and sprain of the upper and lower lumbar spine, most severe pain in the area of L3. Q. Doctor, having in mind the history as you recall it being given to you by Mr. Smith, and his complaints and your physical findings, do you have an opinion as to whether or not the condition diagnosed by you was a result of the injury described to you? A. The man definitely had an injury. He had the condition; whether it was caused by the history he gave me or not, is another question. I don't know. Q. Doctor, assuming the history given to you, that is of his falling on a grizzly, falling on his back on a grizzly; assuming that to be correct, Doctor, in your opinion would the condition diagnosed by you be a result of that sort of incident? A. It could very easily be. Q. Did you thereafter treat Mr. Smith, Doctor? A. Yes. Q. What was the nature of your treatments? A. Primarily physiotherapy in the form of a microtherm treatment. I also ordered a lumbosacral support for him and applied that, which he could take off and put back on by himself at home. Q. How often during this period or following the accident did you see Mr. Smith, Doctor? A. He received treatments on the average of every day to every other day. But that doesn't necessarily mean I actually saw him during that period of time. I saw him intermittently immediately following some of his treatments to see how he was doing. So far as the State Industrial

Insurance Act is concerned, they do not pay office calls during the course of physiotherapy treatment. Therefore, we do not charge office calls at all but merely the physiotherapy. But many times I will see the patient at the same time they receive the physiotherapy. Q. These treatments were given under your direction? A. Yes. Definitely. Q. When was the last time you saw Mr. Smith, Doctor? A. 7-13-59, according to my records."

The doctor examined the workman within a short time after the accident. He testified that, at the time of his examination, Smith "definitely had an injury," and that he "considered it more of a sprain." Smith testified that the injury the doctor found resulted from the fall. In the absence of any evidence of an intervening incident, the record amply sustains the finding that the sprain resulted from the fall.

Appellant's second assignment of error is that

"The trial court erred in ruling that the testimony of claimant's doctor that *it could very easily be* that claimant was injured in a fall, as he claimed, was sufficient medical evidence to establish a causal relation between the claimed fall and the alleged injury."

In this regard, appellant asserts that "The doctor based his medical conclusions 'wholly' on subjective symptoms."

The doctor testified that "The man definitely had an injury. He had the condition; whether it was caused by the history he gave me or not, is another question." The doctor would not assume that, from the time of the accident to the time of his examination, some other intervening cause might not have effected the injury which his examination disclosed. Under these circumstances, he testified that "It could very easily be" that the injury resulted from the fall.

We do not agree that the doctor's conclusion that the workman suffered an injury was based upon subjective symptoms only. Tenderness and sprain are objective symptoms which can be disclosed by a doctor's examination.

Finally, appellant contends that the evidence in the record preponderates against the board's and the trial court's findings. Appellant relies upon the rule announced

in *Olympia Brewing Co. v. Department of Labor & Industries*, 34 Wn. (2d) 498, 208 P. (2d) 1181 (1949), as follows:

"The respondents' position is that 'burden of proof' implies the necessity of producing a preponderance of evidence to establish that the department is wrong. We hold that one sustains the burden of proving that a decision of the joint board [now Board of Industrial Insurance Appeals] is erroneous when one demonstrates that there is not sufficient evidence to support it. [citing case]

"The statutory declaration that the decision of the department, *i.e.*, the joint board, is *prima facie* correct means that, if the evidence is evenly balanced, the finding of the department on that issue must stand. [citing case] But it does not mean that when there is no evidence to establish an essential element in a claim, the fiat of the department may be substituted for evidence. [citing case]

" . . .

" . . . a decision of the joint board is not entitled to be regarded as *prima facie* correct, unless there is competent evidence to support it; . . ."

Appellant's evidence failed to meet the test of the rule. The appellant offered no medical testimony. Its only witness was its safety engineer, who did not see the workman fall and who testified that, from his observation of the employee, he believed him to be "goldbricking." The triers of the facts believed the testimony of the claimant and the doctor, and made findings of fact accordingly. The record sustains these findings.

The judgment is affirmed.

Rosellini, Hunter, and Hale, JJ., and Poyhonen, J. Pro Tem., concur.