[No. 43786. En Banc. January 8, 1976.]

CITIZENS INTERESTED IN THE TRANSFUSION OF YESTERYEAR, ET AL, *Respondents*, v. THE BOARD OF REGENTS OF THE UNIVERSITY OF WASHINGTON, ET AL, *Petitioners*.

*Slade Gorton, Attorney General,* by *James B. Wilson, Senior Assistant (John S. Robinson,* of counsel), for petitioner Board of Regents.

*John P. Harris, Corporation Counsel,* by *Gordon F. Crandall, Assistant,* for petitioners City of Seattle et al.

*Williams, Lanza, Kastner & Gibbs,* by *DeWitt Williams* and *Jerry B. Edmonds,* for petitioner Unico Properties, Inc.

*Norman L. Winn,* for respondents.

FINLEY, J—This case is before the court on a writ of certiorari. It was granted to review an order of the King County Superior Court which denied a motion by the Board of Regents of the University of Washington to dismiss this lawsuit.

The dispositive issue is whether the plaintiffs have commenced, *i.e.,* established, a viable lawsuit protesting, under the provisions of the State Environmental Policy Act of 1971 (SEPA),[1] certain actions of defendants, the Board of Regents of the University of Washington, the unnamed individual members thereof, the City of Seattle, and Mr. Alfred Petty, Superintendent of Buildings of the City of Seattle.

On August 13, 1974, the plaintiffs filed a pleading entitled "Application and Affidavit for Writ of Mandamus and Complaint for Declaratory and Injunctive Relief." Basically, the

---

[1] RCW 43.21C.

plaintiffs alleged in their complaint that the defendants had failed to comply with certain requirements of SEPA with respect to a 1-square-block real-estate development, construction and building project in downtown Seattle (the Rainier Square Project).[2] The project is located on a portion of the well-known Metropolitan Tract, the fee of which is in the State of Washington. Management responsibilities for the Metropolitan Tract are vested in the Board of Regents. Pursuant to statutory authority,[3] the Board, after consideration of several competitive bids, leased a certain portion of the Metropolitan Tract with existing buildings to Unico Properties, Inc.,[4] on July 18, 1953. The purpose of the lease was for Unico, a private Delaware corporation, to manage the existing property and to submit to the Board from time to time recommendations for its improvement and development.

On July 30, 1973, Unico proposed improvement of the property which involved development of the Rainier Square Project. The project finally was approved by the Board on August 2, 1974, pursuant to the terms of the above-mentioned lease. Unico entered into the necessary contracts for the construction and financing of the project. Ostensibly as required by SEPA, final notice of the Board's action approving the project was (1) filed with the Department of Ecology by letter dated August 8, 1974, and (2) published in a newspaper on August 16, 1974.

On August 20, 1974, the complaint for declaratory and injunctive relief was dismissed by the Superior Court at a show cause hearing because the plaintiffs had failed to serve or file a summons with the complaint. A summons and amended complaint for declaratory and injunctive relief subsequently was mailed to the defendants on November 11, 1974, and filed under the same cause number on

---

[2] This previously was known as the Commerce House Project.

[3] RCW 28B.20.382.

[4] Unico previously was known as University Properties, Inc. Although not originally named in the above-captioned case, the superior court ordered Unico joined as a party defendant under CR 21 on June 16, 1975.

November 13, 1974. The defendants City of Seattle and Alfred Petty filed a notice of appearance on November 13, 1974. The Board admitted in its opening brief that it received copies of the summons and amended complaint on November 14, 1974.

On January 9, 1975, the Superior Court struck plaintiffs' summons and amended complaint for failure to obtain leave of court to amend as required by CR 15(a). The court then granted plaintiffs' leave to file an amended and supplemental complaint for declaratory and injunctive relief. This latter pleading was duly filed under the same cause number and served on the defendants.

SEPA has two provisions which limit the period of time for commencing an action to protest or challenge "major actions significantly affecting the quality of the environment."[5] RCW 43.21C.080(2) provides:

> Any action to set aside, enjoin, review, or otherwise challenge any such governmental action . . . on grounds of noncompliance with the provisions of this chapter shall be commenced within sixty days from the date of filing of the notice with the department of ecology, the date of final newspaper publication, or date of mailing, if applicable, whichever is later, or be barred: *Provided, however,* That (1) The time period within which an action shall be commenced shall be ninety days for projects to be performed by a governmental agency or to be performed under government contract, or (2) for thermal power plant projects . . .

We must first decide whether the 60- or 90-day protest period under SEPA is applicable to the action taken by the Board and by the City, and secondly, whether plaintiffs' effort to protest was within the pertinent period of time.

■ It is clear that any possible protest as to the governmental action taken by the City and by Alfred Petty in issuing the necessary building permits must be within the 60-day protest period. They are not performing the project and have no contractual relationship with the parties involved in the Rainier Square Project.

---

[5]RCW 43.21C.030(2)(c).

With respect to the Board's involvement in the project, plaintiffs contend that the 90-day protest period applies because the project essentially is being "performed under government contract." In furtherance of this contention, plaintiffs assert that the lease did not create the typical landlord-tenant relationship because (1) Unico will ultimately be reimbursed for the cost of construction from the University of Washington's New Building Fund, (2) the property is owned by the State, and (3) under the terms of the lease, the Board was required to give its authorization before Unico could commence the project. As we understand plaintiffs' argument, it is, in effect, that the lease constitutes a "government contract" between the Board and Unico for the construction of the project.

The defendants' response is that the project essentially is a private and not a governmental endeavor and, therefore, the 60-day protest period applies.

It is a rule of construction that provisos, such as the one found in RCW 43.21C.080(2), are strictly construed and derive nothing by implication. *Seattle v. Western Union Tel. Co.*, 21 Wn.2d 838, 850, 153 P.2d 859 (1944); *Tabb v. Funk*, 170 Wash. 545, 548, 17 P.2d 18 (1932). The merits of plaintiffs' argument must be considered in light of this rule.

Ground leases, *i.e.*, those for relatively long periods of time,[6] necessarily must anticipate changing conditions and the needs of the parties over the term of the lease. Such leases not uncommonly include provisions for the construction of new improvements, contemplate removal of existing improvements, impose upon the lessee the duty to build, and give the lessor a right to approve construction plans. G. Grenert, *Ground Lease Practice* §§ 1.52-.53 (Cal. Prac. Book No. 54 1971). The lease involved in this case provided that Unico

covenants and agrees from time to time to study the desirability and economic necessity for the construction of new buildings and capital alterations, and to make

[6]The original lease period, from July 18, 1953, to October 31, 1989, was extended by amendment to October 31, 2009.

recommendations to Lessor with reference thereto. Any such new building or capital alteration shall be undertaken by Lessee only with the prior written approval of Lessor, and when so approved and undertaken the cost thereof shall be paid from the New Building Fund . . .

The terms of the lease between Unico and the Board are not unlike provisions found generally in leases for long periods of time. Plaintiffs cite no authority for the proposition that the lease should magically be transformed into a "government contract" for the construction of the Rainier Square Project.

 Unico, as a private corporation, was interested in the Rainier Square Project not solely for reasons of philanthropy but for substantial corporate financial gain throughout the period of the lease. The only contract for construction of the Rainier Square Project is between private parties performing the project, i.e., Unico and its general contractor. The lease does not constitute a contract for the construction of this project, much less a "government contract." It implicitly is recognized by the expression "government contract" that a governmental body or agency necessarily is a party to the contract. See Litchfield Mfg. Corp. v. United States, 338 F.2d 94, 98 (Ct. Cl. 1964); 1 J. McBride & I. Wachtel, Government Contracts § 1.20 (1972).

We are shown no authority that the Board's reimbursement of construction costs incurred by Unico and the ownership of the property by the State convert the lease into a government contract. It appears to us that, if the legislature had intended the 90-day SEPA protest period to apply in situations such as in the instant case, this would have been expressly so provided. We hold that the 60-day SEPA protest period applies to the Board's action.

As to protests under SEPA, RCW 43.21C.080(2), quoted above, required that a lawsuit in the nature of a protest in the instant case had to be commenced within 60 days from the date of filing of notice with the Department of Ecology or the date of final newspaper publication of notice, which-

ever is the later date. So, August 16, 1974, the date of the final newspaper publication of notice is controlling. In other words, in order to challenge the Board's action, SEPA required the plaintiffs to have established their protest by a viable lawsuit within 60 days, *i.e.*, by October 15, 1974.

CR 3(a) provides:

A civil action is commenced by service of a summons as provided in Rule 4 or by filing a complaint. . . . An action shall not be deemed commenced for the purpose of tolling any statute of limitations unless pursuant to the provisions of RCW 4.16.170.

RCW 4.16.170 provides:

For the purpose of tolling any statute of limitations an action shall be deemed commenced when the complaint is filed or summons is served whichever occurs first. If service has not been had on the defendant prior to the filing of the complaint, the plaintiff shall cause one or more of the defendants to be served personally, or commence service by publication within ninety days from the date of filing the complaint. . . . If following service, the complaint is not so filed, or following filing, service is not so made, the action shall be deemed to not have been commenced for purposes of tolling the statute of limitations.

The plaintiffs commenced their action by filing a complaint on August 13, 1974. *Curtis Lumber Co. v. Sortor,* 83 Wn.2d 764, 522 P.2d 822 (1974). The fact that a summons was not filed with the complaint did not preclude the tentative commencement of the action for the purpose of tolling the statute of limitations,[7] and this applies to nonclaim statutes as well. *See Curtis Lumber Co. v. Sortor, supra.*

An action tentatively commenced by filing a complaint must be perfected within 90 days from the date of filing by personal service or by the commencement of service by publication. RCW 4.16.170. The 90-day time period within which the tentatively commenced cause of action had to be perfected expired on November 11, 1974. On that date, the

---

[7]*Cf. Roberge v. Hoquiam School Dist. 28,* 5 Wn. App. 564, 567, 490 P.2d 121 (1971).

plaintiffs mailed to the defendants a summons and amended complaint for declaratory and injunctive relief. Even assuming that the summons and amended complaint could have related back to the original complaint, there is no indication in the record that the defendants were served on November 11, 1974. Unless otherwise admitted or reflected in the record, the presumption is that service by mail is not deemed complete until the third day following the date of mailing. CR 5 (b) (2) (A); *Moore v. Wentz*, 11 Wn. App. 796, 798-99, 525 P.2d 290 (1974). Thus, the action tentatively commenced by filing the complaint on August 13, 1974, was not completed on or before the crucial date of November 11, 1974. The lawsuit became a nullity, and the filing and service of the summons and amended and supplemental complaints were ineffectual because the 60-day period for protest under SEPA, absent a viable lawsuit, expired on October 15, 1974.

As plaintiffs' protest and challenge of the Board's action was ineffectual, the decision of the trial court must be reversed and the plaintiffs' cause of action dismissed.

It is so ordered.

STAFFORD, C.J., HUNTER, HAMILTON, WRIGHT, UTTER, and BRACHTENBACH, JJ., and JOHNSEN and LANGSDORF, JJ. Pro Tem., concur.