[No. 44529. En Banc. December 22, 1977.]

FRANCIS G. JEPSON, *Respondent,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*

WESTERN CLINIC, ET AL, *Respondents,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*

*Slade Gorton, Attorney General,* and *Robert M. Knies* and *David W. Robinson, Assistants,* for appellant.

*Gordon, Thomas, Honeywell, Malanca, Peterson, O'Hern & Johnson,* by *Joe Gordon, Jr.,* for respondent Jepson.

*Dennis Seinfeld,* for respondent Western Clinic, et al.

STAFFORD, J.—The Department of Labor and Industries (Department) appeals from a judgment of the Superior Court which reversed an order of the Board of Industrial Insurance Appeals (Board) and directed the Department to pay respondent Francis Jepson's industrial insurance claim as well as the claim of Western Clinic (Western) for medical services rendered to respondent. We affirm the trial court.

Respondent first became a general foreman for Hart Construction Company in 1940. In 1953 he acquired 10 percent of the company's stock and also became vice–president of the corporation. At that time he and the other corporate officers decided not to elect coverage under the Industrial Insurance Act (Act). There is nothing in the record to indicate that the corporate officers ever discussed the subject of industrial insurance again. But from that time on respondent did not notify the Department of any election to be covered.

By 1972 respondent owned one–third of the corporate stock of the company, however this ownership caused little change in his duties. Slightly more than one–half of his time continued to involve supervision of construction at job sites and less than one–half of his time was spent in corporate decision making. He was paid the same base salary and annual bonus as the other corporate officers.

On July 19, 1973, while supervising work at a job site, respondent fell from a railroad trestle being built by Hart Construction Company. He sustained severe injuries for which he filed a timely claim with the Department. The Department rejected the claim on the ground that respondent "was an officer of a corporation at the time of injury and had not elected to be insured under the provisions of RCW 51.32.030 which provides:

> Any individual employer or any member or officer of any corporate employer who is carried upon the payroll at a salary or wage not less than the average salary or wage named in such payroll and who shall be injured, shall be entitled to the benefit of this title, as and under the same circumstances and subject to the same obligations as a workman: *Provided, That no such employer or the beneficiaries of such employer shall be entitled to benefits under this title unless the director, prior to the date of the injury, has received notice in writing of the fact that such employer is being carried upon the payroll* prior to the date of the injury as the result of which claims for a compensation are made.

(Italics ours.)[1] Western's claim for medical services was denied for the same reason.

Respondent and Western each appealed to the Board which affirmed the Department's rejection of both claims. Thereafter, both respondent and Western appealed to the Superior Court where the cases were consolidated for

---

[1]At the time the corporate officers made their decision the above–cited portion of the law, Laws of 1939, ch. 41, § 2, p. 121, 123–24, read in part as follows:

Any individual employer or any member or officer of any corporate employer who shall be carried upon the payroll at a salary or wage not less than the average salary or wage named in such payroll and who shall be injured, shall be entitled to the benefit of this act as and under the same circumstances, and subject to the same obligations, as a workman: *Provided, That no such employer or the beneficiaries or dependents of such employer shall be entitled to benefits under this act unless the Director of Labor and Industries prior to the date of the injury has received notice in writing* of the fact that such employer is being carried upon the payroll prior to the date of the injury as the result of which claims for a compensation are made.

(Italics ours.) Insofar as the issues herein are concerned the amendments found in RCW 51.32.030 are not significant. Both appellant and respondent have used the latest citation. We shall do likewise.

review. The Superior Court entered findings of fact, conclusions of law and judgment reversing the Board's order and directing the Department to accept respondent Jepson's claim for industrial insurance benefits. The Department was also directed to accept financial responsibility for the medical services rendered respondent by Western. The Department appealed the consolidated actions to the Court of Appeals which certified the matter to this court.

In essence the trial court ruled that the Act's policy of mandatory coverage, expressed in RCW 51.12.020,[2] entitled respondent to receive benefits notwithstanding the notice requirement of RCW 51.32.030. It reasoned that RCW 51.12.020 provides for the only employments excluded from coverage and because corporate officers are not specifically excluded in that section they are mandatorily included.

In 1953, when the corporate officers of Hart Construction decided not to elect industrial insurance coverage, the types of employment covered by the Act were quite different than those covered in July of 1973, the date of respondent's accident. Until the enactment of the Laws of 1971, 1st Ex.

---

[2] RCW 51.12.020

"Employments excluded. The following are the only employments which shall not be included within the mandatory coverage of this title:

"(1) Any person employed as a domestic servant in a private home by an employer who has less than two employees regularly employed forty or more hours a week in such employment.

"(2) Any person employed to do gardening, maintenance, repair, remodeling, or similar work in or about the private home of the employer which does not exceed ten consecutive work days.

"(3) A person whose work is casual and the employment is not in the course of the trade, business, or profession of his employer.

"(4) Any person performing services in return for aid or sustenance only, received from any religious or charitable organization.

"(5) Sole proprietors and partners.

"(6) Any employee, not regularly and continuously employed by the employer in agricultural labor, whose cash remuneration paid by or due from any one employer in that calendar year for agricultural labor is less than one hundred fifty dollars. . . .

"(7) Any child under eighteen years of age employed by his parent or parents in agricultural activities on the family farm."

Sess., ch. 289, §§ 2, 3 the Act covered only those employments specifically classified as extrahazardous. Laws of 1961, ch. 23, § 51.12.010; *Department of Labor & Indus. v. McLain*, 66 Wn.2d 54, 401 P.2d 211 (1965); *Wineberg v. Department of Labor & Indus.*, 57 Wn.2d 779, 359 P.2d 1046 (1961); *Amsbaugh v. Department of Labor & Indus.*, 128 Wash. 692, 224 P. 18 (1924). All employments were declared to be excluded from coverage unless specifically included. It was in this setting that respondent and the other corporate officers chose not to elect to be covered.

In August of 1971, approximately 2 years prior to the accident, the legislature completely reversed the theory of industrial insurance coverage. All employments were declared to be *included* within coverage *except for those specifically excluded.* Laws of 1971, 1st Ex. Sess., ch. 289, §§ 2, 3.

The mandatory coverage provisions of Laws of 1971, 1st Ex. Sess., ch. 289, §§ 2, 3 (now RCW 51.12.020) clearly brought respondent's type of employment within the Act by not specifically excluding it. It is agreed respondent made no personal election to obtain coverage under the Act by notifying the Department. But, the record is silent as to whether Hart Construction Company either made industrial insurance premium payments for its corporate officers or notified the Department director of any election that respondent be covered under the Act. The Department has not raised the issue of nonpayment of premiums, apparently being satisfied that it is adequately protected by RCW 51.48.[3] Thus, the sole issue is whether the Act's statutory scheme provides mandatory coverage for a corporate officer under RCW 51.12.020 despite the officer's failure to elect coverage under RCW 51.32.030. We hold that it does.

---

[3]*For example see:*

"51.48.010 Employer's liability for penalties, injury or disease occurring prior to time payment of compensation secured. Every employer shall be liable for the penalties described in this title and shall also be liable if any injury or occupational disease has been sustained by a workman prior to the time he has secured the payment of such compensation to a penalty in a sum equal to fifty percent of

For a number of years the Department has ruled that written notification of an intent or election to be covered is a prerequisite for coverage of a corporate officer. RCW 51.32.030; WAC 296-17-330. The Department argues that its administrative interpretation of the law is entitled to great weight (citing *Anderson v. O'Brien,* 84 Wn.2d 64, 68, 524 P.2d 390 (1974) and *Cramer v. Van Parys,* 7 Wn. App. 584, 587, 500 P.2d 1255 (1972)) and that the legislature should be deemed to have acquiesced in the administrative interpretation by its failure to act (citing *Bradley v. Department of Labor & Indus.,* 52 Wn.2d 780, 786-87, 329 P.2d 196 (1958)).

■ It should be pointed out that these two means of construing ambiguous statutes relied on by the Department are merely aids for the courts. *Weyerhaeuser Co. v. Department of Ecology,* 86 Wn.2d 310, 545 P.2d 5 (1976). There is no rule, judicial or otherwise, that a legislature is bound by an administrative interpretation of its own statute if the legislature fails to react in a timely manner. The legislative function cannot be usurped by an administrative body based upon claimed "acquiescence". Further, these aids to statutory construction are applicable only in the event of an *ambiguity*. In the absence of an ambiguity the "aids" are inapplicable. *Fecht v. Department of Social &*

the cost for such injury or occupational disease, for the benefit of the medical aid fund."

"51.48.015 Employer's failure to secure payment of compensation. Any employer who engages in work who has wilfully failed to secure the payment of compensation under this title shall be guilty of a misdemeanor. Violation of this section is punishable, upon conviction, by a fine of not less than twenty-five dollars nor more than one hundred dollars. Each day such person engages as a subject employer in violation of this section constitutes a separate offense. Any fines paid pursuant to this section shall be paid directly by the court to the director for deposit in the medical aid fund."

"51.48.020 Employer's misrepresentation. Any employer, who misrepresents to the department the amount of his payroll upon which the premium under this title is based, shall be liable to the state in ten times the amount of the difference in premiums paid and the amount the employer should have paid and for the reasonable expenses of auditing his books and collecting such sums. Such liability may be enforced in the name of the department. Such an employer shall also be guilty of a misdemeanor if such misrepresentations are made knowingly."

*Health Servs.,* 86 Wn.2d 109, 542 P.2d 780 (1975); *Lee v. Jacobs,* 81 Wn.2d 937, 506 P.2d 308 (1973).

The Department's rejection of respondent Jepson's claim assumed RCW 51.32.030 requires a corporate officer, prior to his injury, to choose to become covered on an elective basis and to notify the director of that fact in writing. This interpretation is not supported by the statute itself. RCW 51.32.030 does *not* require that a corporate officer first notify the Department director *of an election to be covered.* Rather, RCW 51.32.030 requires the director to receive notice of the fact that the claimant *"is being carried upon the payroll".* (Italics ours.)

 Even if the Department's rejection had been made on the proper ground (*i.e.,* failure to give prior notice that claimant was being carried on the payroll) its position is not sustainable. While the record clearly indicates that respondent was paid a salary, the record is silent as to whether the director received notice that respondent was being carried on the payroll. We are well aware that the decision of the Board shall be deemed prima facie correct and that the burden of proving it incorrect is upon the party attacking the decision, RCW 51.52.115, and that evenly balanced evidence will leave the decision of the Board standing. *McLaren v. Department of Labor & Indus.,* 6 Wn.2d 164, 107 P.2d 230 (1940). But, this does not mean that where, as here, there is no evidence to support an essential element in a claim, the fiat of the Department may be substituted for evidence. There must be substantial evidence to support the Board's finding before it can be considered prima facie correct. *Olympia Brewing Co. v. Department of Labor & Indus.,* 34 Wn.2d 498, 208 P.2d 1181 (1949), overruled on other points; *Windust v. Department of Labor & Indus.,* 52 Wn.2d 33, 323 P.2d 241 (1958); *St. Paul & Tacoma Lumber Co. v. Department of Labor & Indus.,* 19 Wn.2d 639, 144 P.2d 250 (1943); *Gaines v. Department of Labor & Indus.,* 1 Wn. App. 547, 463 P.2d 269 (1969); *see also Pend Oreille Mines & Metals Co. v. Department of Labor & Indus.,* 63 Wn.2d 170, 385 P.2d

856 (1963); *Groff v. Department of Labor & Indus.*, 65 Wn.2d 35, 395 P.2d 633 (1964). There is no evidence in the record that the director did not receive notice that respondent was being carried on the payroll to support the Board's rejection of respondent's claim.

The Department also relies on *Farr v. Department of Labor & Indus.*, 125 Wash. 349, 216 P. 20 (1923) which held, in interpreting an earlier version of RCW 51.32.030, that compensation should not be awarded for the death of a corporate officer who had never been carried on the payroll submitted to the Department when no notice thereof had been given to the Department as required by the Act.

Careful review of *Farr* reveals that, despite the Department's argument to the contrary, that case does not support its position as to respondent Jepson. *Farr* relies on the fact that the Department had not received prior notice that the *claimant had been carried on the company's payroll* and no premiums had been paid by the logging company. There is nothing in either RCW 51.32.030 or in *Farr,* to support the Department's contention that, as distinguished from notice of being carried on the *payroll,* a claimant must also first have notified the Department of an *election to be covered by the act.*

Looking directly at the statute, we note that the enacting clause of RCW 51.32.030 sets forth those persons who are entitled to benefits under the Act. Clearly, this clause provides for two distinct classes of persons because they have been set forth in the disjunctive. The first class is "any individual employer" and the second class is "any member or officer of any corporate employer."[4] Yet the subsequent statutory *proviso* relied on by the Department to disentitle "member[s] or officer[s] of any corporate employer" from benefits, refers solely to an "employer" or "the beneficiaries of such employer" being disentitled to compensation unless the director "has received notice in writing of the fact that

---

[4]It is of interest that the Department has construed the words "member" and "officer" to be synonymous. WAC 296-17-330.

such employer is being carried upon the payroll prior to the date of the injury . . ." Clearly, an "individual employer" would be disentitled to coverage by the proviso. But, the second class of persons, *i.e.*, the "member[s] or officer[s] of . . . corporate employer[s]" is not mentioned whatsoever in the proviso.

The first half of the statute, or the *enacting clause*, which places an "individual employer" and "any member or officer of any corporate employer" on an equal footing with other workmen was enacted in 1911. The *proviso*, requiring "such employer" to give written notice to the Department before the date of injury, was added by amendment in 1917. *See* Laws of 1911, ch. 74, § 3, p. 346, 348, and Laws of 1917, ch. 120, § 1, p. 474, 476.

■ Because the reference to "any member or officer of any corporate employer" was not brought forward into the newly created *proviso* by the 1917 amendment, the *proviso* thus limits itself to the term "such employer." Whether we believe the legislature may have inadvertently omitted the phrase "member or officer of any corporate employer" is not important. The fact remains that the *proviso* lacks this phrase. We are not authorized to read into it those things which we conceive the legislature may have left out unintentionally. *Department of Labor & Indus. v. Cook,* 44 Wn.2d 671, 677, 269 P.2d 962 (1954); *see also State ex rel. Hagan v. Chinook Hotel, Inc.,* 65 Wn.2d 573, 573–79, 399 P.2d 8 (1965). We must assume the legislature meant what it said.

■ Consequently, the *proviso*'s omission of the second class of coverage has significance. The appropriate office of a proviso or exception is to restrain or modify the declaring or enacting part of the statute or to except something which would otherwise be in the enacting clause. It is not the purpose of a proviso to enlarge upon the enacting clause. *Pacific County v. State,* 84 Wn.2d 681, 529 P.2d 460 (1974); *In re Monks Club, Inc.,* 64 Wn.2d 845, 394 P.2d 804 (1964); *McKenzie v. Mukilteo Water Dist.,* 4 Wn.2d 103, 102 P.2d 251 (1940).

■ Since the *members* or *officers of corporate employers* were omitted from the proviso, they are not subject to disentitlement by reason of the proviso's notice requirement. Where a statute provides for a stated exception, no other exceptions will be assumed by implication. *Citizens Interested in the Transfusion of Yesteryear v. Board of Regents,* 86 Wn.2d 323, 544 P.2d 740 (1976); *Jeanneret v. Rees,* 82 Wn.2d 404, 511 P.2d 60 (1973); *In re Monks Club, Inc., supra; Sandona v. Cle Elum,* 37 Wn.2d 831, 226 P.2d 889 (1951); *State v. Walker,* 14 Wn. App. 348, 541 P.2d 1237 (1975).

There are other reasons why we conclude that the Department interprets the statute incorrectly. The *proviso* to RCW 51.32.030 denies compensation to "*such* employer or the beneficiaries of *such* employer" in the absence of written notice to the director. The word "such" is a descriptive and relative adjective that refers back to and identifies something of like kind previously spoken of. *C.J. Tower & Sons of Buffalo, Inc. v. United States,* 295 F. Supp. 1104, 1108 (Cust. Ct. 1969); *Campbell v. Mueller,* 159 F.2d 803, 806 (6th Cir. 1947); *Luciani v. Certified Grocers of Ill., Inc.,* 105 Ill. App. 2d 448, 245 N.E.2d 523 (1969); *Richardson–Merrell, Inc. v. Main,* 240 Ore. 533, 402 P.2d 746 (1965). Thus, the question is to what like prior term does the expression "such employer" refer.

Common sense dictates that the "employer" to which the *proviso* refers in its use of the term "such employer" is the "individual employer" previously mentioned in the *enacting clause.* First, while the *proviso* disentitles one from benefits, the benefits are not of the kind or of the nature that would be paid to a *corporate employer* (the only other kind of employer mentioned in the enacting clause). Second, the word "beneficiary" as defined by RCW 51.08.020 means "a husband, wife, child, or dependent of a workman in whom shall vest a right to receive payment under this title . . ." It goes without saying that corporate employers do not have "beneficiaries" to which the disentitlement process could apply. Third, the required notice is made to

inform the director that *"such employer is being carried upon the payroll* prior to the date of the injury". The notice provision makes sense only if one refers to an "individual employer" being carried on the payroll. One does not carry a corporate employer on the payroll for purposes of industrial insurance. Next, an "employer" is defined by RCW 51.08.070, as "any *person,* body of *persons, corporate or otherwise . . .* engaged in . . . any work covered by the provisions of this title . . ." Also RCW 51.08.180, defining "workman," reads in part: "every person . . . who is *engaged in the employment of an employer* under this title, whether by way of manual labor or otherwise in the course of his employment . . ." Finally, RCW 51.08.185 defines "employee" as a "'workman' when the context would so indicate . . ." Turning back to RCW 51.32.030, it is clear that in the enacting portion of the statute the reference to "any member or officer of any corporate employer" indicates that the *corporation* falls within the definition of an *employer.* RCW 51.08.070. Further, RCW 51.32.030 itself clearly refers to that body as a "corporate employer."

What then is the status of a member or officer of a corporate employer? Once again the statutes provide the answer. Clearly one working as respondent did is a person engaged in the employment of an employer. In other words, such a person is a "workman" or "employee" as those terms are defined in RCW 51.08.180 and RCW 51.08.185. This means that the enacting portion of RCW 51.32.030 not only deals with two distinct classes of persons entitled to benefits under the act, but that the two classes are very different. The first is the "individual *employer*", *i.e.,* a class of *employer* who, because of the statute, is treated as a workman for the purpose of benefits. The second class is a "member or officer of any corporate employer" who is actually an *employee* and who, by statute, is also entitled to the statutory benefits.

As indicated earlier, the *proviso* of RCW 51.32.030 deals only with "individual employers" as differentiated from

members or officers of corporate employers. Most certainly the *proviso* does not deal with *employees*. Consequently, the only one who could logically fall within the category of "such employer" as used in the *proviso* is the "individual employer" and the only "beneficiary" would be the beneficiary of "an individual employer."

Respondent Jepson was a "workman" and an "employee" of the Hart Construction Company within the definition of those terms. He was engaged in the employment of his employer at the time of injury. The *proviso,* discussed at length above, does not require written notice to the director of the election of one in respondent's classification prior to injury in order for him to receive his statutory benefits under RCW 51.32.030. As also discussed at length, the statutory disentitlement of individual employers in the proviso cannot be extended by implication to members or officers of corporate employers.

The foregoing interpretation of RCW 51.32.030 gives effect to all parts of the statute and leaves it without ambiguity. Further, it is wholly consistent with the mandatory coverage of RCW 51.12.020, which lists all of the exclusions from mandatory coverage.

■ Despite the analytical weakness of the Department's reliance on *Farr* as a precedent, and despite the failure of that analysis to meet any of the issues discussed herein, it is suggested that the holding in *Farr,* as interpreted by the Department, should be treated with deference because of its age. Appellant urges that many legislative sessions have come and gone since the judicial pronouncement in 1923 thus leading to a presumption that the legislature acquiesced in the Department's interpretation of the judicial determination. Even assuming the Department has interpreted *Farr* correctly, the failure of the legislature to act following judicial construction of a statute does not forever bind the court to perpetuate either a poorly reasoned judicial conclusion or an error. Actually, the failure of a legislature to act is only one factor to consider as an aid to the process of statutory construction. *In re Estate of Elliott,* 22

Wn.2d 334, 359–60, 156 P.2d 427, 157 A.L.R. 1335 (1945). Courts are never prevented from reexamining their own prior decisions, nor should they be. *In re Estate of Elliott, supra.* The doctrine of stare decisis is not applicable to statutory construction (*Windust v. Department of Labor & Indus.,* 52 Wn.2d 33, 323 P.2d 241 (1958)) when it is decided that earlier interpretations are wanting, faulty, or even wrong. *See also Petersen v. Department of Labor & Indus.,* 40 Wn.2d 635, 245 P.2d 1161 (1952). Thus, stare decisis does not force us into either an illogical or unrealistic straightjacket which requires us to accept the unanalytical and unreasoned conclusion the Department attributes.

Finally, appellant contends the trial court erred by concluding that the 1971 amendment of RCW 51.12.020 repealed RCW 51.32.030 by implication. We need not reach that issue, having affirmed the trial court on other grounds discussed at length here. *Vacca v. Steer, Inc.,* 73 Wn.2d 892, 895, 441 P.2d 523 (1968).

The trial court is affirmed.

WRIGHT, C.J., and ROSELLINI, HOROWITZ, and HICKS, JJ., concur.

ROSELLINI, J. (concurring)—I have signed Justice Stafford's opinion. However, I desire to point out what appears to me to be persuasive that the respondent was covered under the act.

The 1971 amendment to the industrial insurance act constituted a radical departure in the scope of coverage of industrial insurance. Previously, RCW 51.12.010, as enacted in 1961, was limited to covering only those employments "inherently constantly dangerous" and "such inherently hazardous works and occupations." The 1961 amendment then defined specifically over 70 such occupations. Thus, by design and philosophy, the 1961 act excluded all occupations except those specifically included.

The 1971 amendment completely reversed this method by stating that all occupations were included within the coverage except those few specifically excluded.

This intent was well illustrated by Laws of 1972, 1st Ex. Sess., ch. 43, § 6, in the first paragraph:

> There is a hazard in all employment and it is the purpose of this title to embrace all employments which are within the legislative jurisdiction of the state.

The exclusions contained in 1971 and 1972 amendments to RCW 51.12.020 were set forth as "the *only* employments" (italics mine) not within the mandatory coverage and dealt only with domestic service, gardening, casual employment, charitable work in return for aid or sustenance only, agricultural work and "*sole proprietors and partners.*" (Italics mine.)

The legislature in 1971 added a second paragraph to RCW 51.12.010, which reads:

> This [act] shall be liberally construed for the purpose of reducing to a minimum the suffering and economic loss arising from injuries and/or death occurring in the course of employment.

RCW 51.32.030, which gives corporate officers the right to elect to be covered by the act, was impliedly repealed by the amendment in 1971 to RCW 51.12.020. The only employments (which are here pertinent) which shall not be included within the mandatory coverage of this title are "(5) sole proprietors and partners." Nothing is said about excluding an officer of a corporate employer.

In a clear and unambiguous language, the legislature has described the only exemption from the mandatory coverage. Sole proprietors and partners are exempted; corporate officers and members are not.

This to me establishes a commonsense approach to the problem—a single proprietor and partners have it within their power to elect to come under the coverage, while an officer of a corporation, unless he is the majority stockholder, is powerless to elect to come under the coverage.

Yet his official duties may be most extrahazardous and dangerous.

Suppose an officer of a corporation is the supervisor for blasting in tunnel work. He must work with and supervise the use of explosives. He is helpless and powerless to obtain the protection of the act. His corporate employer is the only one who can exercise this option.

Suppose an officer is a supervising steel engineer, who must inspect and supervise the use of steel on the 50th floor in a building under construction. Here again, he is engaged in dangerous work without the power to come under the industrial insurance act, and he is powerless to protect his dependents and beneficiaries.

The use of the term "only" in RCW 51.12.020, and the phrase "all employments which are within the legislative jurisdiction of the state" in RCW 51.12.010, does not permit an additional exemption, as the appellants contend.

To me, the intent of the legislature to protect this class of workers or officers of corporations is clear. The language of the act is unambiguous and does not exclude officers of corporations from the mandatory coverage of RCW 51.12.

I would affirm.

WRIGHT, C.J., and HICKS, J., concur with ROSELLINI, J.

DOLLIVER, J. (dissenting)—Since 1911, the State of Washington has had a program of industrial insurance to provide "sure and certain relief for workmen, injured in their work, and their families and dependents . . . regardless of questions of fault." RCW 51.04.010. The 1911 statute provided for coverage only in cases where the workman was "injured in extra hazardous work." Laws of 1911, ch. 74, § 1, p. 345. In the intervening years until 1971, the definition of "extrahazardous work" was continually changed and expanded. In 1971, the legislature abandoned the idea of extrahazardous work and declared there was "a hazard in all employment . . . and it is the purpose of this title to

embrace all . . . <u>employments</u> which are within the legislative jurisdiction of the state." Laws of 1971, 1st Ex. Sess., ch. 289, § 2, p. 1543; RCW 51.12.010. The legislature at the same time also listed those "employments which shall not be included within the mandatory coverage" of the act. RCW 51.12.020.

Prior to 1971, to be covered under industrial insurance, one had to be (1) a workman/employee and (2) engaged in extrahazardous employment as defined by the legislature. After 1971, one had to be (1) a workman/employee and (2) not in an excluded employment. Since 1911, employers and workmen/employees have been defined in the statute (*compare* RCW 51.08.070 *with* 51.08.180–.185) and except for the provisions of RCW 51.32.030 only workmen/employees have been covered. See RCW 51.32.010, .015.

Thus, while the 1971 amendment includes the *occupation* in which plaintiff was engaged, RCW Title 51 does not automatically cover an individual working in that occupation unless (a) he is a workman/employee under the provisions of RCW 51.08.180–.185, or (b) he is covered under the provisions of RCW 51.32.030. In their essential parts, the definitions of employer and workman/employee have not changed since 1911. The plaintiff insists, and the trial court agreed, that, since the employment is covered, anyone engaged in that employment is also automatically covered. This is not so. Since 1911, the act has distinguished between covered employment—*i.e.,* the occupation—and covered workmen/employees. The 1971 amendments did not change this distinction. The shift from only extrahazardous occupations being covered to all occupations being covered but for specified exceptions is irrelevant to the disposition of this case.

Prior to 1971, the employment in which plaintiff was engaged was classified as extrahazardous. This classification alone would not have provided coverage for plaintiff unless he was a workman/employee or, as an employer, he met the requirements of RCW 51.32.030.

Thus, two questions are posed: (1) Was plaintiff an employer or an employee for purposes of coverage by industrial insurance? and (2) If an employer, as an employer did he qualify for coverage under RCW 51.32-.030?

Plaintiff asserts he was a "workman" engaged in covered employment at the time of his injury and the majority agrees. While concededly he was working in a covered employment, it was as an employer rather than as a workman/employee. Plaintiff was a corporate officer of the employer. Since 1911, if a person is a corporate officer of an employer the qualification for coverage does not come under the provisions of the act as an employee/workman (RCW 51.08.070; 51.08.180–.185; 51.32.010–.015), but rather as a corporate officer under RCW 51.32.030.

Plaintiff is a corporate officer who, at the time of his injury, was working in a covered occupation. If plaintiff was entitled to benefits, it was only as a corporate officer and not as a workman/employee. In that capacity—as a corporate officer—he would have been qualified for coverage under RCW 51.32.030 "as and under the same circumstances and subject to the same obligations as a workman: *Provided* . . . the director, prior to the date of the injury, has received notice in writing of the fact that such employer is being carried upon the payroll . . ." RCW 51.32.030. *But see* Laws of 1977, 1st Ex. Sess., ch. 323, § 14, p. 1239.

The majority first argues that, even though the statute expressly requires "notice in writing of the fact that such employer is being carried upon the payroll prior to the date of the injury as the result of which claims for a compensation are made" (RCW 51.32.030), since there was no evidence adduced by the State that the employer did *not* notify the Director of the Department of Labor and Industries somehow the department has failed to meet its burden of proof. I would think it elementary from the statute that a claimant has the burden of proof to enter evidence showing he had given written notice to the director and was

entitled to coverage. *Jussila v. Department of Labor & Indus.,* 59 Wn.2d 772, 370 P.2d 582 (1962). If he fails to do so, the claim falls. RCW 51.32.030. *See also* RCW 51.52.050 (Laws of 1975, 1st Ex. Sess., ch. 58, § 1, p. 305); RCW 51.52.102; RCW 51.52.115; *O'Toole v. Department of Labor & Indus.,* 182 Wash. 202, 46 P.2d 388 (1935); *La Vera v. Department of Labor & Indus.,* 45 Wn.2d 413, 416, 275 P.2d 426 (1954) (Grady, J., concurring); *Sayler v. Department of Labor & Indus.,* 69 Wn.2d 893, 421 P.2d 362 (1966); *Scott Paper Co. v. Department of Labor & Indus.,* 73 Wn.2d 840, 440 P.2d 818 (1968).

The notion that the Department must prove a negative and that it must show the plaintiff did not follow the statute was never argued by the plaintiff and is raised for the first time by the majority. The cases cited by the majority do say "one sustains the burden of proving that a decision of the joint board is erroneous when one demonstrates that there is not sufficient evidence to support it." *Olympia Brewing Co. v. Department of Labor & Indus.,* 34 Wn.2d 498, 504, 208 P.2d 1181 (1949). Here, however, no effort was made by plaintiff to show there was not sufficient evidence to support the board—and for good reason. The evidence supporting the ruling of the director and the board is that plaintiff failed to prove or even allege the essential point: that he had given written notice to the director he was on the payroll prior to the date of injury. *Olympia Brewing Co. v. Department of Labor & Indus., supra.*

In the record before the hearing examiner, it was stated by plaintiff he understood he was not covered. It was stipulated that at the time of the accident neither Hart Construction Company nor plaintiff had notified the Department of an election for him to be covered by industrial insurance and that in fact they elected that plaintiff not be covered. Furthermore, in his written argument to the board, plaintiff specifically rejected the relevancy of the failure by plaintiff to follow the written notice proviso.

How does an employer elect that it does or does not wish to be covered? There is only one way: by advising or failing

to advise the Department "in writing of the fact that such employer is being carried upon the payroll prior to the date of the injury as the result of which claims for a compensation are made." RCW 51.32.030.

Prior to 1917, a corporate officer could elect to be covered simply by being carried on the payroll "at a salary or wage not less than the average salary or wage named in such pay roll." Laws of 1911, ch. 74, § 3, p. 346, 348. Since 1917, an employer cannòt be covered unless he is on the payroll and unless the Department is notified of this fact in writing. RCW 51.32.030. When plaintiff concedes and the trial court finds no election had been made, it follows that the Department was not notified in writing that plaintiff was on the payroll. It is all rational and straightforward in contrast to the tortured and convoluted analysis of the majority.

The majority dismisses *Farr v. Department of Labor & Indus.*, 125 Wash. 349, 216 P. 20 (1923), (1) because it does not support the position of the Department and (2) since the Department allegedly interpreted *Farr* erroneously we need not be forced "into either an illogical or unrealistic straightjacket which requires us to accept the unanalytical and unreasoned conclusion the Department attributes." These reasons lose substance when tested against the above analysis. *Farr*, stating the undisputed language of the statute, squarely holds that, if there is no notice by the employer that he is on the payroll, then no relief shall be granted. No notice was given here and the statute, and thus *Farr*, should be followed. To suggest, as the majority seems to, that *Farr* which upheld the plain language of the act should not be followed does indeed have this court move into a new era of judicial legislation.

But in its struggle to resist the obvious, the majority makes a second contention: Since the proviso does not repeat the language of the enacting clause, somehow it does not make a reference to the enacting clause. This analysis is totally unconvincing. Using the strained logic of the majority, since the term "such employer" has no modifier, it can

hardly refer to *anything* in the enacting clause since that clause refers to "*individual* employer *or any member or officer of any corporate* employer." But this is too much even for the majority and it calls upon that favorite phrase when rational argument disappears—"common sense" to "dictate" that the term "'such employer'" must refer to "'individual employer.'"

It does far less violence to common sense to look to the purpose of the entire statute, RCW Title 51. RCW 51.08-.070 clearly states the term "employer" includes persons alone and as part of the corporate structure. The entire premise of the statute is built around the idea that work-men/employees are automatically covered but that unless they qualify under RCW 51.32.030 employers are not. Under the majority's reading of the statutes, however, every corporate officer in the state would be considered a work-man and be automatically covered under RCW Title 51 while the individual employer would not be covered if he failed to notify the Department in writing that he was on the payroll. This wipes out much of the elaborate definition of employer (RCW 51.08.070) and makes RCW 51.32.030 appear as an elaborate charade. This result is hardly consonant with any reasonable determination of legislative intent. Can it reasonably be contended the legislature intended to treat the corporate officers of the Boeing Company and the Weyerhaeuser Company as workmen/employees under RCW 51.08.180–.185? The question answers itself.

The rationale for the proviso was clearly set forth by the hearing examiner in his proposed decision and order:

> The enacting portion of RCW 51.32.030 has been part of the Workmen's Compensation Act since its inception (Laws of 1911, Ch. 74, Sec. 3). Under this provision, individual employers and officers, members of a corporate employer, were not entitled to benefits under the Act unless they were carried on the payroll in the prescribed manner. There was no express requirement that premiums be paid to the Department on the injured person's pay prior to an injury, or for that matter, that the

employer even have an active account with the Department prior to the injury. Nor was it even required that the payroll be in written form. Furthermore, even where the employer had an active account with the Department, and was therefore paying premiums, his payment to the Department was simply based upon the total number of men engaged in a particular class of hazardous work rather than listing each individual by name upon whom a premium was being paid. Upon injury of a corporate officer or member, there would be presented the problem of identification and verification as to whether or not such person was one of those upon whom a premium was in fact being paid.

As it stood upon enactment, it is apparent that the statute posed difficult, if not impossible, administrative problems for the Department. In 1917, the legislature added the proviso portion of the statute (Laws of 1917, Ch. 120, Sec. 1). The Senate Journal of 1917 discloses that the proviso (Senate Bill 317) was introduced at the Department's request. It completely remedies the aforementioned omissions and defects of the enacting clause standing alone. It would be illogical to suppose that the legislature intended such remedy to apply only to "individual employers" and thereby leave the statute still defective from the standpoint of its administration as to members and officers of corporations.

While we should be mindful of the need to protect injured workmen/employees, we should not ignore the overall intent of the statute and by judicial fiat overturn more than 66 years of legislation and declare corporate officers are now workmen/employees.

While I share the concern for plaintiff implicit in the opinion of the majority, the fact is that he and the other officers and shareholders of the corporation—three in number—made a considered choice *not* to pay industrial insurance premiums, and plaintiff is suffering the consequences. Coverage for plaintiff was easily obtainable and a reasonable review of the statutes plus a reading of *Farr* would have shown the way.

I agree RCW Title 51 should be liberally construed. RCW 51.12.010. There is a difference, however, between

construction and destruction. We should not do violence to that statute and the legislative scheme contained therein by adopting the strained and unreasonable interpretation of the majority.

HAMILTON, UTTER, and BRACHTENBACH, JJ., concur with DOLLIVER, J.