[No. 47934–8. En Banc. February 11, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. R. N. REGAN, ET AL, *Appellants.*

48

*Victor V. Hoff,* for appellants.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *David W. Waterbury, Deputy,* for respondent.

WILLIAMS, J.—Michael Clinton, an employee of the Yakima Magazine Center (Center), and R. N. Regan, the

president of J–R Distributors, Inc., which owns the Center, were convicted by a jury of two counts of selling obscene materials. They appealed these convictions to the Court of Appeals, Division Three. Pursuant to RCW 2.06.030(d) and RAP 4.2, the Court of Appeals certified the case to us. We now vacate those convictions.

Yakima police officers purchased two 8 millimeter films from Michael Clinton. These films, entitled "True Lust" and "Sixteen Inches of Meat", became the basis for a warrant to search the magazine store and seize "all films and multiple copies of films, and all video cassettes offered for sale". Supplemental Clerk's Papers, at 22. Pursuant to that warrant, the Center was searched and seizures were made.

Clinton, because of the two purchases, was subsequently charged with two counts of selling obscene material. R. N. Regan, as president of J–R Distributors, Inc., was charged with the same two sales plus possession with intent to sell three other films. The latter charges were the product of three films seized during the search.

Appellants argued that the seizure of evidence pursuant to the warrant was an unlawful violation of their Fourth Amendment rights, and moved to suppress the seized evidence as well as the purchased films. As for the materials seized pursuant to the warrant, the trial court granted the suppression motion because it found that the warrants "did not particularly describe the property to be seized". Supplemental Clerk's Papers, at 23. The trial court refused to suppress the films lawfully purchased prior to the warrant. On the basis of the lawfully purchased films, a jury convicted appellants of two sales of obscene materials—a gross misdemeanor under RCW 9.68.010.[1]

---

[1]RCW 9.68.010 reads as follows:

"Every person who—

"(1) Having knowledge of the contents thereof shall exhibit, sell, distribute, display for sale or distribution, or having knowledge of the contents thereof shall have in his possession with the intent to sell or distribute any book, magazine, pamphlet, comic book, newspaper, writing, photograph, motion picture film, phonograph record, tape or wire recording, picture, drawing, figure, image, or any

■ Appellants' primary contention is that our authoritative construction of Washington's obscenity statute, RCW 9.68.010, in *State v. J–R Distribs., Inc.,* 82 Wn.2d 584, 512 P.2d 1049 (1973), is unconstitutionally overbroad both on its face and as it applies to them. Although this issue was raised for the first time on appeal, we have uniformly reviewed such issues when they relate to some constitutional right. *State v. Theroff,* 95 Wn.2d 385, 391, 622 P.2d 1240 (1980); *In re Lee,* 95 Wn.2d 357, 363–64, 623 P.2d 687 (1980); *State v. Green,* 94 Wn.2d 216, 231, 616 P.2d 628 (1980); *State v. Cox,* 94 Wn.2d 170, 173, 615 P.2d 465 (1980). We now reaffirm that important principle.

In *J–R Distributors,* we provided an authoritative construction of RCW 9.68.010 by incorporating the 3–prong obscenity test of *Miller v. California,* 413 U.S. 15, 24, 37 L. Ed. 2d 419, 93 S. Ct. 2607 (1973), into the statute. In so doing, we set out the *Miller* guidelines in full:

> (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest. . . . (b) whether the work depicts or describes, *in a patently offensive way, sexual conduct specifically defined by the applicable state law*; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

(Italics ours.) *State v. J–R Distribs., Inc., supra* at 594, quoting from *Miller v. California, supra* at 24. After the above quoted authoritative construction of RCW 9.68.010,

---

object or thing which is obscene; or

"(2) Having knowledge of the contents thereof shall cause to be performed or exhibited, or shall engage in the performance or exhibition of any show, act, play, dance or motion picture which is obscene;

"Shall be guilty of a gross misdemeanor.

"The provisions of this section shall not apply to acts done in the scope of his employment by a motion picture operator or projectionist employed by the owner or manager of a theatre or other place for the showing of motion pictures, unless the motion picture operator or projectionist has a financial interest in such theatre or place wherein he is so employed or unless he caused to be performed or exhibited such performance or motion picture without the knowledge and consent of the manager or owner of the theatre or other place of showing."

we went on to state the following clarification, which became the basis of instruction 10 in the case before us:

> Photographs, pictures and drawings which portray in a patently offensive way sexual conduct such as ultimate sexual acts, normal or perverted, actual or simulated, *or which depict acts of masturbation, fellatio, cunnilingus, lewd exhibition of the genitals and sexual relations between humans and animals are "obscene"* if, taken as a whole, the subject matter does not have a serious literary, artistic, political, or scientific value.

(Italics ours.) *J–R Distributors,* at 601–02. Although we required a portrayal of sexual conduct in a way that is "patently offensive" at the beginning of the above quotation, the remaining language requires only that the jury find "acts of masturbation, fellatio, cunnilingus, lewd exhibition of the genitals [or] sexual relations between humans and animals" were portrayed in the films at issue. This does not comply with the standard articulated by the United States Supreme Court in *Miller,* which requires the trier of fact to determine that such acts are "patently offensive" to be obscene. Thus, our authoritative construction of RCW 9.68.010 in *J–R Distributors* failed to accurately reflect the *Miller* guidelines, even in 1973. Since instruction 10 tracks the above language from *J–R Distributors* almost word for word, it suffers from the same defect.[2]

██ It is a familiar rule of statutory construction that when a statute has once been construed by the highest court of the state, that construction is as much a part of the

---

[2]Instruction 10 reads as follows:

"Material is obscene when:

"(a) The average person, applying contemporary community standards, would find that the work, taken as a whole, appeals to the prurient interest; and

"(b) That the average person, applying contemporary community standards, would find that the motion picture depicts or describes in a patently offensive way sexual conduct such as ultimate sex acts, actual or simulated, *or which depicts acts of masturbation, fellatio, cunnilingus, or lewd exhibition of the genitals*; and

"(c) The work, taken as a whole, lacks serious literary, artistic, political or scientific value.

"All three elements must be present before the material may be found to be obscene." (Italics ours.)

statute as if it were originally written into it. *Yakima Vly. Bank & Trust Co. v. Yakima Cy.,* 149 Wash. 552, 556, 271 P. 820 (1928). *See also Windust v. Department of Labor & Indus.,* 52 Wn.2d 33, 54–55, 323 P.2d 241 (1958). We must therefore examine the language in *J–R Distributors* to determine if our authoritative construction of RCW 9.68-.010 was, itself, constitutionally overbroad as the appellants assert.

Addressing overbreadth claims serves the beneficial function of eliminating the "chilling effect" on privileged exercises of First Amendment rights, whether or not the party challenging the statute has engaged in privileged conduct. *NAACP v. Button,* 371 U.S. 415, 432, 9 L. Ed. 2d 405, 83 S. Ct. 328 (1963). *See generally* Note, *The First Amendment Overbreadth Doctrine,* 83 Harv. L. Rev. 844 (1970). The *J–R Distributors* construction of RCW 9.68.010 is overbroad because it proscribes not only patently offensive sexual conduct, but conduct which is *not* patently offensive as measured by contemporary community standards. Since the statute reaches conduct which is potentially protected, appellants have standing to challenge the statute's overbreadth even if their activity is within the permissible scope of the statute and even if such constitutional overbreadth can be considered "harmless error" as applied to them. *Lewis v. New Orleans,* 415 U.S. 130, 133–34, 39 L. Ed. 2d 214, 94 S. Ct. 970 (1974). However, because conduct and not merely speech is involved here, appellants must prove the statute's overbreadth is not only real, but substantial as well, judged in relation to the statute's plainly legitimate sweep. *Ward v. Illinois,* 431 U.S. 767, 776, 52 L. Ed. 2d 738, 97 S. Ct. 2085 (1977); *Broadrick v. Oklahoma,* 413 U.S. 601, 615, 37 L. Ed. 2d 830, 93 S. Ct. 2908 (1973).

We find the failure to include the requirement of patent offensiveness in *J–R Distributors* and instruction 10 to be both real and substantial. The erroneous construction of RCW 9.68.010 in *J–R Distributors* and language in instruction 10, which fail to require sexual conduct to be patently offensive, go to the heart of this case since it is

undisputed that acts of masturbation, fellatio, and cunnilingus were depicted in the films. We cannot determine whether the jury convicted appellants for selling obscene materials because they were "patently offensive" or simply because any of the above sexual acts were present in the films. The failure to instruct the jury that they had to find the sexual acts depicted in the films to be "patently offensive" means that they could not have convicted appellants under the minimum constitutional standards of *Miller* and *Smith v. United States,* 431 U.S. 291, 52 L. Ed. 2d 324, 97 S. Ct. 1756 (1977). Without inclusion of the phrase "patently offensive", *Miller*'s second guideline becomes an *objective* standard whereby the jury is relieved of its duty to apply contemporary community standards. The Tennessee Supreme Court recently invalidated the Tennessee obscenity statute because it failed to require that sexual conduct be found "patently offensive". In striking down that statute, the court noted the following:

> The problem with the Tennessee Act's definition is that it clearly means that a detailed description of sex, in any context, is per se "patently offensive." The result of that definition would be to eliminate from consideration by the trier of fact the issue of whether or not a description or portrayal, etc., of sex was or was not "patently offensive." Thus, the definition nullifies the second prong of the *Miller* test. The *Roth* [*v. United States,* 354 U.S. 476 (1957)] Court made it clear that the portrayal of sex in art, literature and scientific works is not, in and of itself, sufficient reason to deny first amendment protection to such material. 354 U.S. at 487, 77 S.Ct. 1304.
>
> The definition of "patently offensive" is in direct conflict with *Roth* and *Miller,* encroaches upon federal and state freedom of speech and press guarantees and is constitutionally infirm.

*Leech v. American Booksellers Ass'n,* 582 S.W.2d 738, 751 (Tenn. 1979). We find the above authority persuasive in resolving the issues before us as to RCW 9.68.010. The failure to properly instruct the jury that they must find the sexual conduct depicted in the films in question to be "patently offensive" therefore constitutes reversible error.

■ Since the time of our decision in *J–R Distributors,* the United States Supreme Court has extended the requirement of applying contemporary community standards to the second prong of the *Miller* test. *Smith v. United States, supra* at 300–01. *Smith* did not purport to change *Miller*'s guidelines, as it cites *Miller* itself for support of its clarification of the *Miller* guidelines. *Smith,* at 301. We now accept the *Smith* clarification of *Miller*'s guidelines as a logical development of the *Miller* holding and incorporate it as part of our authoritative construction of Washington's obscenity statute. Other courts have acted in a similar fashion. *See United States v. Various Articles of Obscene Merchandise,* 600 F.2d 394, 406 (2d Cir. 1979); *State v. Bartanen,* 121 Ariz. 454, 460–62, 591 P.2d 546 (1979); *D & J Enters., Inc. v. Michaelson,* 121 R.I. 537, 401 A.2d 440, 444–46 (1979). In the present case, the trial court accurately reflected the new requirement of *Smith* by applying the contemporary community standards test to its instruction 10. This portion of the instruction was constitutionally adequate as given, and entitles the appellants to no relief.

As clarified by our holdings above, we now restate our authoritative construction of RCW 9.68.010 as follows:

(a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest. . . . (b) whether [*applying those same contemporary community standards the average person would find that*] the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

*State v. J–R Distribs., Inc., supra* at 594, quoting from *Miller v. California, supra* at 24. In addition, we now take this opportunity to correct the language of our elaboration of the *Miller* guidelines as stated in the *J–R Distributors* case:

Photographs, pictures and drawings which portray in a

patently offensive way sexual conduct such as ultimate sexual acts, normal or perverted, actual or simulated, or which depict [*patently offensive*] acts of masturbation, fellatio, cunnilingus, lewd exhibition of the genitals and sexual relations between humans and animals are "obscene" if, taken as a whole, the subject matter does not have a serious literary, artistic, political, or scientific value.

*State v. J–R Distribs., Inc., supra* at 601–02. Future jury instructions should reflect these clarifications.

We have closely examined the other assignments of error raised by appellants and have found them to be without merit. Nevertheless, due to the error in failing to properly instruct the jury as to patent offensiveness, we must vacate the convictions of appellants and remand for a new trial based upon our latest authoritative construction of RCW 9.68.010, as set out in this opinion.

ROSELLINI and STAFFORD, JJ., concur.

UTTER, J. (concurring)—I concur with the reasoning and result of the majority, and would add only the following admonition.

Although we may, as we did in *State v. J–R Distribs., Inc.,* 82 Wn.2d 584, 512 P.2d 1049 (1973), and have done in this case, authoritatively construe RCW 9.68.010 to provide meaning to what is obscene, I do not believe this is the appropriate role of this court in what is admittedly a very difficult arena of regulation. In *Miller v. California,* 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607 (1973), the United States Supreme Court set forth guidelines for regulating obscenity. *Miller* and its progeny (*see, e.g., Pinkus v. United States,* 436 U.S. 293, 56 L. Ed. 2d 293, 98 S. Ct. 1808 (1978); *Smith v. United States,* 431 U.S. 291, 52 L. Ed. 2d 324, 97 S. Ct. 1756 (1977); *Hamling v. United States,* 418 U.S. 87, 41 L. Ed. 2d 590, 94 S. Ct. 2887 (1974)) delineate the proper roles of legislature, trier of fact, and appellate court.

Although *Miller* stated that the sexual conduct depicted

or described in regulated works "must be specifically defined by the applicable state law, as written or authoritatively construed", *Miller,* at 24, the case did not mandate that courts would assume the legislative role of cataloging, modifying, and updating the type of conduct regulated under obscenity laws. In the second prong of *Miller's* 3-part guidelines, the court referred to "sexual conduct specifically defined *by the applicable state law,"* and in providing examples of such specific definition the court looked only to state statutes. (Italics mine.) *Miller,* at 24 & n.6. While the *Miller* court did discuss the types of sexual conduct that might be so regulated, its discussion was limited to what a *"state statute* could define". (Italics mine.) *Miller,* at 25.

In *J–R Distributors,* we provided the necessary constitutional specificity to Washington's very general obscenity law. In doing so, we were guided by "common sense", not legislative edict or public hearings. In the 8 years since *J–R Distributors,* we have been given no indication—save legislative silence—that our intuition in that case reflected what the Legislature intended to prohibit through enactment of RCW 9.68.010. As we have stated before,

> the failure of the legislature to act following judicial construction of a statute does not forever bind the court to perpetuate either a poorly reasoned judicial conclusion or an error.

*Jepson v. Department of Labor & Indus.,* 89 Wn.2d 394, 406, 573 P.2d 10, 17 (1977).

Although our saving construction in this case is constitutional, *see Ward v. Illinois,* 431 U.S. 767, 52 L. Ed. 2d 738, 97 S. Ct. 2085 (1977), I believe our continued shepherdship of Washington's obscenity law in this manner lies beyond the pale of our proper judicial function, and that further changes in definition should be by the Legislature.

This would not dictate that judicial responsibility is ended in the obscenity arena. *Cf. State v. Princess Cinema of Milwaukee, Inc.,* 96 Wis. 2d 646, 292 N.W.2d 807 (1980) (court refused to make saving construction of Wisconsin's

obscenity law despite its constitutional capacity to do so). This court's role in obscenity should be limited to its responsibility to preserve the proper functions of legislature, trier of fact, and reviewing court. The trier of fact must be permitted to apply contemporary community standards to *Miller*'s first and second prongs to determine if the work taken as a whole appeals to the prurient interest and if the work depicts or describes in a patently offensive way certain specified sexual conduct. *Smith v. United States, supra* at 301. While the Legislature may not define what contemporary community standards are, it may circumscribe the standard's geographical terms. *Smith,* at 303. *Jenkins v. Georgia,* 418 U.S. 153, 156, 41 L. Ed. 2d 642, 94 S. Ct. 2750 (1974). Above all, the Legislature should take responsibility for specifically defining the types of sexual conduct it seeks to regulate pursuant to the second prong of the *Miller* test. *Miller,* at 24, 25, and 27.

At the same time, neither trier of fact nor the Legislature should be permitted to proceed with unbridled discretion. We must ensure that regulation is limited to depictions or descriptions of sexual conduct, *Miller,* at 24, of the "hard core" variety.[3] *Smith,* at 301; *Hamling,* at 114; *Jenkins,* at 160–61; *Miller,* at 27. In addition, *Miller*'s third prong— whether taken as a whole the work lacks serious literary, artistic, political or scientific value—is an objective criterion by which we may review the trier of fact's discretion in

---

[3]Although one might complain that restriction of legislative prerogative to regulation of depictions or descriptions of "hard core" sexual conduct itself partakes of a legislative intrusion on our part, such a criticism would be misconceived. The limitation as to "hard core" sexual conduct is a constitutional limitation. Where legislative regulation is not limited to "the public portrayal of hard-core sexual conduct for its own sake, and for the ensuing commercial gain," *Miller,* at 35, our constitutional scrutiny is required. Regulation of simple nudity, for example, would implicate First Amendment concerns, and it remains our responsibility to undertake "independent review of constitutional claims." *Miller,* at 25. Notwithstanding the above discussion, the Legislature may still choose *not* to regulate certain types of hard core activity or limit its regulation of hard core material to children or to terms of accessibility. *See Smith,* at 303. Without a specific pronouncement by the Legislature, this court is left in a quandary as to the scope of RCW 9.68.010.

finding a work obscene. *Smith,* at 301.

I would submit that the task of regulating in this area will become less difficult if each branch in our system of justice maintains its appropriate role. Our appropriate role in this area is to interpret the laws, not to legislate them. *See Jepson v. Department of Labor & Indus.,* 89 Wn.2d 394, 405, 573 P.2d 10, 15 (1977).

*Miller's* 3–prong test for obscenity regulation was intended as a guideline to the states and not as a substitute for comprehensive legislation. Although RCW 9.68.010 is constitutional as presently construed, in the future I would not construe the statute if such saving construction would require us to continue to conjecture about the kinds of sexual conduct the statute seeks to regulate under the second prong of the *Miller* test. "State legislation must still define the kinds of conduct that will be regulated by the State." *Smith v. United States,* 431 U.S. 291, 302, 52 L. Ed. 2d 324, 97 S. Ct. 1756 (1977). The Legislature is the proper body to define the intended scope of its obscenity statute.

DOLLIVER, J., concurs with UTTER, J.

DIMMICK, J. (dissenting)—I agree that this court's authoritative construction in *State v. J–R Distribs., Inc.,* 82 Wn.2d 584, 512 P.2d 1049 (1973) may have been constitutionally overbroad. I cannot agree, however, that petitioners' convictions must be vacated and the cause remanded for a new trial. It is clear upon viewing the films that a juror would not be misled by the omission of the words "patently offensive" in one section of the instruction where they did appear in another part of that same instruction. This technicality should not constitute reversible error in the instant case. The oft–quoted statement of Justice Stewart in defining pornography that "I know it when I see it," *Jacobellis v. Ohio,* 378 U.S. 184, 197, 12 L. Ed. 2d 793, 84 S.

Ct. 1676 (1964) (Stewart, J., concurring), is apt here.

BRACHTENBACH, C.J., and DORE, J., concur with DIMMICK, J.