[No. 46950-4. En Banc. February 11, 1982.]

LEILONI IRENE CURTIS, ET AL, *Appellants*, v. THE CITY OF SEATTLE, *Respondent*.

*Gilbert H. Levy* and *Doherty & Levy* (*Arthur Wells*, of counsel), for appellants.

*Douglas N. Jewett, City Attorney,* and *Sean Sheehan, Assistant,* for respondent.

DORE, J.—This case examines the constitutionality of the City of Seattle's lewd conduct ordinance and that city's body studio ordinance. We affirm appellants' convictions under these statutes and, in so doing, find no constitutional infirmities.

Appellants are members and employees of the Venusian Church (Church). The philosophy of the Church centers on an individual's acceptance of his or her own sexuality, thereby discarding the repressions upon sex imposed by our contemporary society. The Church conducts retreats and seminars and operates the Temple of Venus (Temple) located at 1414 First Avenue in Seattle. The walls of the Temple foyer are covered with quotations and explanations of the philosophy of the Church. Past the foyer is another room where slides, movies, and an accompanying narration explain this philosophy and Church activities. Beyond is another room with booths for viewing films or slides. A further room contains a series of booths arranged on two sides of a bed. Once admitted to a booth, a patron deposits a Susan B. Anthony dollar into a coin box which raises a shade for 3 minutes revealing the performance area where

two or more adult nude people engage in a variety of sex acts ranging from gentle touching to sexual intercourse. Throughout this activity, a sound system "conveys by music and voice the idea that open sexuality is appropriate". Adjacent to the booths is another room with Church philosophy displayed on the walls.

All appellants but J. H. Gearon were charged by respondent City of Seattle (City) with lewd conduct under Seattle Criminal Code 12A.10.070[1] (lewd conduct ordinance) and with being employed on the premises of a body studio in violation of Seattle Criminal Code 12A.10.080[2] (body studio

---

[1]Section 12A.10.070 provides:

"A. As used in this section a 'lewd act' is:

"1. An exposure of one's genitals or female breasts; or

"2. The touching, caressing or fondling of the genitals or female breasts; or

"3. Sexual intercourse as defined in Section 12A.06.070 A7; or

"4. Masturbation; or

"5. Urination or defecation in a place other than a washroom or toilet room.

"B. A person is guilty of lewd conduct if he intentionally performs any lewd act in a public place or at a place and under circumstances where such act could be observed by any member of the public.

"1. 'Public place' has the meaning defined in Section 12A.10.010 A3.

"C. The owner, manager or operator of premises open to the public wherein alcoholic beverages are sold, served or consumed is guilty of permitting lewd conduct if he intentionally permits or causes any lewd act on the premises.

"D. This section shall not be applied to artistic or dramatic performances in a theater or a museum."

[2]Section 12A.10.080 provides:

"A. As used in this section, a 'body studio' is any premises, other than a massage parlor, reducing salon, or public bathhouse as defined in the License Code (Ordinance 48022) and licensed as such, upon which is furnished for a fee or charge or other like consideration the opportunity to paint, massage, feel, handle, or touch the unclothed body or an unclothed portion of the body of another person, or to be so painted, massaged, felt, handled or touched by another person, or to observe, view or photograph any such activity, and shall include any such premises which is advertised or represented in any manner whatsoever as a 'body painting studio,' 'model studio,' 'sensitivity awareness studio' or any other expression or characterization which conveys the same or similar meaning and which leads to the reasonable belief that there will be furnished on such premises for a fee or charge or other like consideration the opportunity to paint, massage, feel, handle, or touch the unclothed body or an unclothed portion of the body of

ordinance). Gearon was charged with conducting a business on the premises of a body studio. Suffice it to say, without further elaboration, that the activities in view from the 3–minute–per–dollar booths were activities clearly prohibited by the lewd conduct ordinance. By its own terms, however, that ordinance does not apply to dramatic or artistic performances which take place in a theater or museum. Section 12A.10.070(D).

The municipal court granted the City's motion in limine, preventing appellants' witnesses from testifying that the activities engaged in were "communicative". All appellants were found guilty of the charges. Gearon was fined $500. The other seven appellants were given 30–day deferred suspended sentences. This appeal followed.

## I
### LEWD CONDUCT ORDINANCE

■ Appellants contend that the United States Constitution gives them the right to prove that their activity was communicative, thereby not obscene, and protected by the First Amendment. The grant of the motion in limine was, argue appellants, reversible error. When freedoms of speech and religion are affected, as appellants claim here, the State may regulate only upon a showing of a compelling State interest. *United States v. O'Brien*, 391 U.S. 367, 20 L. Ed. 2d 672, 88 S. Ct. 1673 (1968). They argue that their evidence would have tended to negate the State's interest because it would have established that viewing their activities controlled by the lewd conduct ordinance (1) has no harmful effect, (2) would not lead to violence or other criminal acts, and (3) is actually beneficial. The assertion, taken as true, that the activities were not harmful but were beneficial to the viewers, has no bearing on our determina-

---

another person, or to be so painted, massaged, felt, handled or touched by another person, or to observe, view or photograph any such activity.

"B. It is unlawful for any person to operate, conduct, or maintain a body studio, or to knowingly conduct any business related thereto on the premises of a body studio, or to knowingly be employed on such premises." (Footnote omitted.)

tion. Such an argument could only tend to show that the lewd conduct ordinance is a bad or an unwise law. Such questions are inappropriate for a court to resolve. *Seattle v. Buchanan,* 90 Wn.2d 584, 584 P.2d 918 (1978).

As to the contention that the behavior was communicative, therefore not obscene and not subject to regulation, we refer to *Buchanan* where we upheld the constitutionality of this ordinance against an attack that it chilled First Amendment rights. Even if we were to assume that appellants' behavior is not obscene under the tests articulated in *Miller v. California,* 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607 (1973) and *Roth v. United States,* 354 U.S. 476, 1 L. Ed. 2d 1498, 77 S. Ct. 1304 (1957), we held in *Buchanan* that conduct related to expression may be regulated when nude exposure or explicit sexuality is involved. We recognize that in *Buchanan* no assertion had been made that expression was involved, as the appellants before us today argue. They distinguish *Buchanan* on this basis. However, in *Buchanan* an overbreadth challenge was made and rejected by this court.

A statute may not be drafted with so broad a sweep as to include in its prohibitions activities which are protected by the First Amendment. *United States v. Robel,* 389 U.S. 258, 19 L. Ed. 2d 508, 88 S. Ct. 419 (1967). If so drawn, a statute will be void even if the conduct actually regulated was not constitutionally protected. *Kunz v. New York,* 340 U.S. 290, 95 L. Ed. 280, 71 S. Ct. 312 (1951). In *Buchanan,* when faced with this challenge, we balanced the City's legitimate interest in maintaining public order and decency against the constitutional protection afforded to some nudity as a means of expression. We held that the lewd conduct ordinance did not violate the constitution because it affirmatively provided for artistic or dramatic performances as being exempt from its reach.

Since the ordinance here in question is manifestly directed at conduct and does not purport to regulate the expression of ideas, and indeed expressly makes allowance for the prohibited conduct in a context of such

expression, and in the absence of any showing that any person has a right to present a public theatrical production involving breast exposure outside a theatre or museum, we must reject the appellants' contentions that this ordinance prohibits constitutionally protected speech.

*Buchanan,* at 603.

■ Appellants also contend that they should have been allowed to present their evidence that the activities were "communicative" because, if so proven, the activities would have constituted an "artistic or dramatic" performance and would have been exempt from the lewd conduct ordinance. This argument was not raised below and we shall not consider it at this time. We note, however, that the pivotal question as to the applicability of the exemption is whether the performance takes place in a theater. If the place of performance is not a theater, the content of the behavior is irrelevant. The record indicates that the municipal court had determined as a fact that the Temple was not a theater. The court found that the performance area was a "bed". Appellants point to our definition of theater in *Buchanan* at page 596—literally meaning "a place for seeing"—and argue that the Temple comes within that broad language. However, we limited that definition by specifying types of theaters as

playhouses, opera houses, motion picture theatres, drive-in theatres, ballet theatres, and puppet theatres, and even open air theatres.

*Buchanan,* at 596. Furthermore, we said that a "theatre" was limited "to buildings which are customarily used for artistic performances". *Buchanan,* at 600. The lower court's finding that the Temple is not a theater is supported by substantial evidence. In light of the record before us and our holding in *Buchanan,* we hold it was not error for the trial court to exclude evidence which may have shown that the defendants' conduct was "communicative".

## II
### Body Studio Ordinance

Appellants assert that the body studio ordinance prevents all nude touching and is, therefore, overbroad. When these activities are performed as part of a legitimate expression of ideas in a theater, they cannot be regulated. The body studio ordinance purports to do so, chilling First Amendment expression and rendering the ordinance void.

The City contends that the ordinance is only intended to apply to those places where the principal activity provided, in exchange for taking the fee, is the touching, handling, etc. Where the prohibited activity is only incidental to other protected forms of expression, the ordinance does not apply. Legitimate artistic or dramatic performances are thereby excluded from the reach of the statute.

■ The language of the body studio ordinance does not limit its reach. Appellants are correct that, if literally applied, legitimate means of expression would be controlled in violation of the First Amendment. However, a limiting construction by the courts will save a statute from an overbreadth challenge. *Erznoznik v. Jacksonville,* 422 U.S. 205, 45 L. Ed. 2d 125, 95 S. Ct. 2268 (1975). The municipal court adopted such a saving construction, as reflected in its memorandum opinion.

The essence of the offense is the business of touching/viewing for a fee.

Does this ordinance sweep within its prohibitions protected first amendment activity? As argued by defendants, the ordinance, literally read, could be said to apply to a dramatic production where two or more actors held hands before a paying audience. This is not a reasonable application of its terms. No reasonable person reading the terms "body painting studio", "model studio", "sensitivity awareness studio", and "paint, massage, feel, handle, or touch the unclothed body" could conclude that it related to a dramatic production. Many plays and ballet performances involve much touching but the drama and the dance are central to the performance. The touching is incidental. "The statute must be given a reasonable construction to avoid absurd consequences",

State v. Cann, 92 Wn.2d 193 (1979).

. . .

The court finds that 12A.12.160 by its own terms does not apply to any protected expression.

We adopt this limiting construction and, therefore, find no constitutionally overbroad language such that protected conduct or speech is regulated.

All convictions are affirmed.

ROSELLINI, WILLIAMS, and DIMMICK, JJ., concur.
DOLLIVER, J., concurs in the result.

STAFFORD, J. (concurring)—I concur with the result of the majority; however, I feel it is necessary to discuss more fully why Seattle's lewd conduct ordinance does not unconstitutionally infringe on First Amendment rights.

The United States Supreme Court has recognized the right of cities and states to regulate offensive conduct in public places even though it may involve expressive activity or speech. *See Seattle v. Buchanan,* 90 Wn.2d 584, 599–603, 584 P.2d 918 (1978), for a detailed discussion. As Justice Douglas stated in *Roth v. United States,* 354 U.S. 476, 512–13, 1 L. Ed. 2d 1498, 77 S. Ct. 1304 (1957): "No one would suggest that the First Amendment permits nudity in public places, adultery, and other phases of sexual misconduct. . . . Government should be concerned with antisocial conduct, not with utterances." *See also Erznoznik v. Jacksonville,* 422 U.S. 205, 211 n.7, 45 L. Ed. 2d 125, 95 S. Ct. 2268 (1975). It is also clear that

> when "speech" and "nonspeech" elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms.

*United States v. O'Brien,* 391 U.S. 367, 376, 20 L. Ed. 2d 672, 88 S. Ct. 1673 (1968). Thus, even conceding appellant's activity might have been communicative (as indeed we must, given the motion in limine granted by the trial court), it is not thereby shielded from governmental regula-

tion if certain conditions are met.

The requisite conditions are set forth in *United States v. O'Brien, supra* at 377. First the governmental regulation must fall within the constitutional power of the government. Second, it must further an important or substantial governmental interest. Third, the governmental interest must be unrelated to the suppression of free expression. Fourth, the restriction must be no greater than is essential to the furtherance of that interest. The instant ordinance meets these tests.

Cities in our state have the power to regulate activity such as public nudity. Such regulations are justified by considerations of public morals and general welfare, both incident to the general "police power" of municipalities. *See Seattle v. Hill,* 72 Wn.2d 786, 797, 435 P.2d 692 (1967); *Tacoma v. Fox,* 158 Wash. 325, 290 P. 1010 (1930); Const. art. 11, § 11. "[R]egulation of indecent exposure and of conduct inducing to breaches of the peace are traditional and proper subjects of the police power . . ." *Kew v. Senter,* 416 F. Supp. 1101, 1105 (N.D. Tex. 1976). By promoting public morals, the regulations also further an important or substantial public interest. *Crownover v. Musick,* 9 Cal. 3d 405, 427, 509 P.2d 497, 107 Cal. Rptr. 681 (1973); *Kew v. Senter, supra. See generally Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 37 L. Ed. 2d 446, 93 S. Ct. 2628 (1973). The courts below determined as much, the municipal court stating that this ordinance concerned a "clear and important governmental interest in the welfare and morals of the public and in maintaining peace and good order in the city."

These regulations "reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct." *Broadrick v. Oklahoma,* 413 U.S. 601, 615, 37 L. Ed. 2d 830, 93 S. Ct. 2908 (1973). The conduct here is constitutionally unprotected; there is no right to appear nude in public. Rather, the constitution only requires that some nudity be tolerated as part of some larger form of expression meriting protection, when the

communication of ideas is involved. *State v. Baysinger*, ___ Ind. ___, 397 N.E.2d 580 (1979), *appeal dismissed sub nom. Clark v. Indiana,* 446 U.S. 931, 64 L. Ed. 2d 783, 100 S. Ct. 2146 (1980).[3] Seattle's ordinance makes ample allowance for artistic nudity by its exemption of artistic or dramatic performances.[4]

The third factor in *O'Brien* is also met. As stated in *Crownover v. Musick,* 9 Cal. 3d 405, 427, 509 P.2d 497, 512, 107 Cal. Rptr. 681 (1973):

> The regulation is aimed at conduct, not speech; at "separately identifiable conduct" (*Cohen v. California, supra,* 403 U.S. 15, 18), not at an activity "entirely divorced from actually or potentially disruptive conduct. . . ." (*Tinker v. Des Moines School Dist., supra,* 393 U.S. 503, 505.)

*See also Kew v. Senter, supra* at 1105: "it is difficult to conceive of ideas entitled to First Amendment protection which can be solely—or even best—expressed by baring the anus or genitals in the circumstances forbidden by the statutes."

As to the fourth element of *O'Brien,* if the ordinance does impose some incidental restriction on First Amendment freedom of speech and expression, it is certainly no greater than is essential to the furtherance of the governmental interest involved. Quoting from *Crownover,* 9 Cal. 3d at

---

[3]*Gabriele v. Old Orchard Beach,* 420 A.2d 252, 256 (Me. 1980), noted that the appeal in *State v. Baysinger,* ___ Ind. ___, 397 N.E.2d 580 (1979), was dismissed by the Supreme Court for want of a substantial federal question. It noted that pursuant to *Hicks v. Miranda,* 422 U.S. 332, 45 L. Ed. 2d 223, 95 S. Ct. 2281 (1975), this disposition signifies that the Supreme Court sustained the decision on the merits, with precedential force as to all courts except the Supreme Court itself. *Baysinger* upheld a public indecency statute's application to topless dancing in any public place, providing that the dancing does not occur as part of an artistic production.

[4]Appellants did not argue in the courts below that they were covered by the dramatic performance exception to the ordinance. Having failed to raise it below, such argument is deemed waived. *See Bradbury v. Aetna Cas. & Sur. Co.,* 91 Wn.2d 504, 512, 589 P.2d 785 (1979). This court should not have allowed the issue on the merits. Thus, I do not agree with the majority's unnecessary discussion of the issue.

428:

> The ordinances do not *prohibit* speech or expression or entertainment; they merely direct that the entertainer cannot appear with genitals or breasts exposed. The ordinances proscribe no more than is necessary to ban the nudity which has been deemed harmful to public welfare or morals.

It is clear appellant's conduct has been constitutionally regulated.

BRACHTENBACH, C.J., concurs with STAFFORD, J.

DIMMICK, J. (concurring)—I concur in the result of the majority. I wish, however, to address the discussions of the majority (at page 64) and the dissent (at pages 73–79) relating to appellants' contentions that if they were allowed to present evidence that their activity was communicative such evidence would have established that their activities were exempt as "artistic or dramatic performances in a theater or a museum." Seattle Criminal Code 12A.10-.070(D).

In the Seattle Municipal Court appellants moved to dismiss the charges filed against them due to a denial of their constitutional rights under the first and fourteenth amendments to the United States Constitution. The court ruled against their motions. Further, the court granted a motion in limine excluding all testimony that the behavior of appellants was communicative or expressive of ideas as being irrelevant to the constitutional issues. Upon their conviction appellants filed a writ of certiorari with the King County Superior Court rather than seeking their remedy of a de novo trial by that court. Appellants again argued that the ordinance violated their constitutional rights. Superior Court Judge Noe dismissed the writ and affirmed all convictions. Judge Noe spoke of the motion in limine in relation to the constitutional guaranty of freedom of expression agreeing that the evidence as to the communicative nature of the activity was irrelevant to the constitutional issues. Both Dore, J., and Stafford, J., discuss the constitutional

issue involved at great length and no additional discussion is here necessary.

Appellants now contend that their conduct was within the ordinance's exemption for artistic or dramatic performances in theaters and the trial court should not have excluded the evidence as to the communicative nature of their conduct as it bore out their statutory argument. Appellants, however, never raised this issue until they reached this court. Accordingly, the argument is not timely and we should not consider it. I am puzzled by the assertion made by the dissent that appellants' constitutional claims necessarily included a claim that the conduct was exempt from the ordinance. The constitutional and statutory arguments are two separate contentions.

Utter, J., in his dissent, contends that without the excluded evidence the prosecution did not prove all of the essential elements of the crime and therefore we must consider appellants' statutory argument. I fail to see the merit of this argument.

The majority recognizes that the pivotal question with regard to the applicability of the statutory exemption is whether the place of performance is a theater or museum. If it is not, the content of the performances is irrelevant under the terms of the ordinance. The trial court never limited evidence as to whether the place of performance was a theater. Rather the motion in limine excluded only testimony as to the communicative or expressive nature of the conduct. In addition, the municipal court judge had before him the police reports describing the behavior, extensive photographs of the actual performances, affidavits describing the setting and background of the show, and had personally gone to the scene and inspected the booths and viewed the performance area. Following this extensive fact–finding process he found that the performance area was a "bed". This necessarily excludes a theater or museum as the court was required to find their absence in order to convict. The appellants first challenged this finding on appeal to this court. We should not consider the contention

since it was not properly preserved, having been waived at the trial level.

In any event, there is substantial evidence in the record to support the judge's finding that the behavior was proscribed by the ordinance. The photographs, affidavits, and view of the scene gave him a peculiarly good grasp of the setting. The coin–booth arrangement itself was unlike any of the examples of theaters given in *Seattle v. Buchanan,* 90 Wn.2d 584, 596, 584 P.2d 918 (1978), in its isolation of the performers and its intermittent, 3–minutes–for–a–dollar viewing arrangement.

UTTER, J. (dissenting)—To resolve this case we must inquire into the gray area between appropriate legislative regulation of morality and unconstitutional encroachment on human liberty. While the history of modern government has reflected the struggle with the extent to which morality can be legislated and subsequently enforced, J. Mill, *Prefaces to Liberty* 241 (1959); P. Devlin, *The Enforcement of Morals* (1965); H. Hart, *Law, Liberty, and Morality* (1963), it is the Legislature which must initially define the will of the public. The constitution is our only guide in passing on such legislation, and its insistence upon reasoned, consistent regulation frames our inquiry.

The majority opinion is incorrect inasmuch as it erroneously upholds the trial court's refusal to permit appellants to demonstrate their activity was not obscene and therefore not proscribed by Seattle's lewd conduct ordinance. The majority also mistakenly imposes a narrowing construction on Seattle's body studio ordinance, which the ordinance does not contemplate. And finally, the narrowing construction imposed by the majority does not itself pass constitutional muster.

### LEWD CONDUCT ORDINANCE

The majority opinion upholds the trial court's ruling on respondent City's motion in limine denying appellants the opportunity to submit evidence that their activity was

communicative. Although appellants' contention may strain
credulity, the only issue is whether appellants should be
given any opportunity to present evidence as to whether
their conduct was protected by the First Amendment. We
do not reach the issue of whether the conduct, if communi-
cative, was protected by the First Amendment.[5] The only
question is whether the trial court was correct in foreclosing
inquiry into the entire area regardless of the merits of
appellants' proffered evidence.

I

Appellants' reason for presenting such evidence was to
demonstrate that their activity was not obscene and thus
not subject to proscription by the lewd conduct ordinance.
Seattle Criminal Code (hereinafter SCC) 12A.10.070.

The majority cites *Seattle v. Buchanan,* 90 Wn.2d 584,
584 P.2d 918 (1978), in which we held Seattle's lewd con-
duct ordinance not unconstitutionally overbroad, as
authority for dispensing with appellants' claim. In doing so,
the majority fundamentally misconceives the difference
between a claim that a statute is unconstitutionally over-
broad and a claim that a statute is unconstitutional as
applied to a party. Here, appellants claim that Seattle's
lewd conduct ordinance is unconstitutional *as applied* to
them. A ruling by this court that Seattle's lewd conduct
ordinance is not unconstitutionally overbroad is irrelevant
to appellants' "as applied" claim. All statutes that are not
unconstitutionally overbroad are capable of unconstitu-
tional application. L. Tribe, *American Constitutional Law*
711 (1978). As the majority concedes, the *Buchanan* case

---

[5]Appellants were prepared to present extensive evidence in its favor. A num-
ber of experts were prepared to testify that the purpose of appellants' organiza-
tion was to accept one's sexuality. A prominent sexologist who helped design the
show at the Temple of Venus was prepared to state the purpose of the live show
was to provide an example of a spontaneous warm and sensual experience. Pro-
fessor Pepper Schwartz of the University of Washington's sociology department
was prepared to testify that the Temple of Venus represented a group of people
sincerely committed to human liberation through relaxation of sexual inhibitions
and taboos.

did not involve a claim that the proscribed activity was expression protected by the First Amendment; this case does involve such a claim. By holding in *Buchanan* that Seattle's lewd conduct ordinance is not unconstitutionally overbroad, we stated only that the ordinance did not by its terms proscribe constitutionally protected activity. This holding is irrelevant to a claim that a particular application of the ordinance goes beyond its contemplated scope and unconstitutionally proscribes activity protected by the First Amendment.[6] Therefore, appellants' ability to present evidence that their activity was communicative was crucial to their claim that the ordinance was unconstitutionally applied to them. The trial court's ruling refusing admission of such evidence was thus reversible error.

## II

The majority deals separately with appellants' claim that if they were allowed to present evidence that their activity was communicative such evidence would have established that appellants' activity was exempt under the "artistic or dramatic performance" exemption of the ordinance. SCC 12A.10.070(D). The majority's analysis of this separate claim is flawed in two major respects.

## A

The majority refuses to consider appellants' claim that their activity was exempt under the ordinance because, it argues, appellants raised this claim for the first time on appeal. In truth, appellants' claim that they are exempt is precisely the same as their claim raised at trial that their

---

[6]*See California v. LaRue,* 409 U.S. 109, 119 n.5, 34 L. Ed. 2d 342, 93 S. Ct. 390 (1972), where the Court stated:

"Because of the posture of this case, we have necessarily dealt with the regulations on their face, and have found them to be valid. The admonition contained in the Court's opinion in *Seagram & Sons* v. *Hostetter,* 384 U. S. 35, 52 (1966), is equally in point here: 'Although it is possible that specific future applications of [the statute] may engender concrete problems of constitutional dimension, it will be time enough to consider any such problems when they arise. We deal here only with the statute on its face. And we hold that, so considered, the legislation is constitutionally valid.'"

activity was not obscene (discussed in part I, *supra*). In *Buchanan,* we held that Seattle's lewd conduct ordinance was not overbroad because it provided for an exemption for artistic and dramatic performances protected under the First Amendment. *Cf. Doran v. Salem Inn, Inc.,* 422 U.S. 922, 45 L. Ed. 2d 648, 95 S. Ct. 2561 (1975) (court found ordinance overbroad because it lacked any exemption for performances protected by the First Amendment). To maintain a coherent and consistent jurisprudence in this area of regulation, the lewd conduct ordinance's exemption must be viewed as coextensive with protection of expressive activity that is not obscene. For the reasons articulated below, the obscenity standards adopted by our court in *State v. Regan,* 97 Wn.2d 47, 640 P.2d 725 (1982), must be applied to the Seattle lewd conduct ordinance's exemption for artistic or dramatic performances to integrate our holdings in the obscenity area with the type of regulation contemplated by the ordinance here.

There can be no question that the State has the power to regulate lewd conduct and indecent exposure. Nevertheless, such regulation must exclude expressive conduct within the protective ambit of the First Amendment. Seattle's ordinance purports to exclude such protected expression through its exemption for artistic or dramatic performances. Such performances are protected only if they are not obscene. The simple fact that they occur in theaters or museums does not insulate performances from regulation. At the same time, a theater or museum is not the only place where conduct regulated by Seattle's ordinance may receive the protection of the First Amendment. Whether the activity is a movie or a live performance, the State's concern for public morality is the same. As to movies and other depictions or descriptions of sexual conduct, we have adopted obscenity standards for ascertaining the permissible scope of regulation. *State v. Regan, supra.* While the ordinance here regulates live conduct as opposed to "depictions or descriptions" of that conduct, the City has introduced no evidence that its purported interest in public

morals is any different from the State's interest with regard to obscenity regulation.[7]

The majority and concurring opinions justify the lewd conduct ordinance as protecting the State's interest in public welfare and morals. No attempt is made in these opinions to differentiate that state interest from the State's interest in regulating obscenity articulated by the United States Supreme Court in *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 58, 37 L. Ed. 2d 446, 93 S. Ct. 2628 (1973) as "the interest of the public in the quality of life and the total community environment, the tone of commerce in the great city centers, and, possibly, the public safety itself." Although the government interest may vary in strength based on whether the regulation is of conduct or depictions or descriptions of conduct, the degree of strength will only affect the balance and not the standards by which that balance is achieved. We must therefore construe the ordinance's exemption as protecting nonobscene expression that may not otherwise be proscribed by the State.[8]

---

[7]It is true that when regulation is based on the police power attendant to liquor licensing, the State is conferred with "something more than the normal state authority over public health, welfare, and morals." *LaRue,* at 114. In such circumstances, nonobscene activity may be regulated. *Id.; Doran v. Salem Inn, Inc.,* 422 U.S. 922, 45 L. Ed. 2d 648, 95 S. Ct. 2561 (1975); *Seattle v. Hinkley,* 83 Wn.2d 205, 517 P.2d 592 (1973). At the same time *LaRue* implies that unless the Twenty–First Amendment is implicated, the State is limited to regulation of the obscene. *See New York State Liquor Auth. v. Bellanca,* 452 U.S. 714, 69 L. Ed. 2d 357, 101 S. Ct. 2599 (1981). The State's interest in liquor licensing is obviously not present here.

[8]Where there is no claim that the proscribed conduct is expressive, such conduct is outside the ambit of First Amendment protection; thus lewd conduct and indecent exposure laws are generally valid. As the late Justice Douglas stated:

No one would suggest that the First Amendment permits nudity in public places, adultery, and other phases of sexual misconduct.

*Roth v. United States,* 354 U.S. 476, 512, 1 L. Ed. 2d 1498, 77 S. Ct. 1304 (1957) (quoted by Justice Stafford in his concurrence to this case). And as the United States Supreme Court stated in *Erznoznik v. Jacksonville,* 422 U.S. 205, 211 n.7, 45 L. Ed. 2d 125, 95 S. Ct. 2268 (1975):

Scenes of nudity in a movie, like pictures of nude persons in a book, must be considered as a part of the whole work. See *Miller* v. *California,* 413 U. S. 15, 24 (1973); *Kois* v. *Wisconsin,* 408 U. S. 229 (1972). In this respect such

Since appellants claim that their activity is communicative and within the artistic or dramatic performance exception to the lewd conduct ordinance, proscription of their activity may not be analyzed simply as a regulation of conduct.[9] We must provide the same scrutiny of appellants' activity that we provide for allegedly obscene materials. Appellants' behavior may well be unprotected by the First Amendment and proscribable under this ordinance, but we cannot make judgments about such behavior by using facile devices that refer only to whether the performances occur

nudity is distinguishable from the kind of public nudity traditionally subject to indecent–exposure laws.

Even where conduct regulated under such laws implicates the First Amendment, application of the obscenity standards will not dictate exemption under Seattle's lewd conduct ordinance. Furthermore, where the State's interest focuses on protecting minors, the scope of regulation is broader than under the traditional obscenity standards applicable to adults. *Erznoznik v. Jacksonville, supra; Ginsberg v. New York,* 390 U.S. 629, 20 L. Ed. 2d 195, 88 S. Ct. 1274 (1968). The invasion of privacy, *see FCC v. Pacifica Found.,* 438 U.S. 726, 57 L. Ed. 2d 1073, 98 S. Ct. 3026 (1978), or the protection of privacy, *see Stanley v. Georgia,* 394 U.S. 557, 22 L. Ed. 2d 542, 89 S. Ct. 1243 (1969), may also inform the scope of proscription under the obscenity standards. None of these concerns has been articulated in this case, however.

[9]Although the analysis in the concurrence is appropriate to the overbreadth of the lewd conduct ordinance, it is not pertinent to appellants' claim that the ordinance was unconstitutionally applied to them. The concurrence is correct in its statement that conduct that is communicative "is not thereby shielded from government regulation", concurrence at page 66, and our obscenity standards reflect just such an approach. Depictions or descriptions of explicit sexual conduct may be proscribed if they lack serious literary, artistic, political or scientific value when "taken as a whole." They need not be utterly without redeeming communicative value. The analysis in the concurrence leads to the conclusion that Seattle's lewd conduct ordinance is a valid regulation of conduct that is communicative since the ordinance's exemption for artistic or dramatic performances saves from regulation all constitutionally protected expressive conduct. Although this conclusion is correct, it defines only the beginning of the problem. No conclusion as to the ordinance's general validity justifies the trial court's exclusion of evidence as to whether appellants' conduct was exempt under the ordinance. The citation in the concurrence to *Bradbury v. Aetna Cas. & Sur. Co.,* 91 Wn.2d 504, 512, 589 P.2d 785 (1979) as authority for appellants' waiver of this claim does not solve the problem. That case involved a nonconstitutional claim. This case involves constitutional claims that may be raised for the first time on appeal. *See State v. Green,* 94 Wn.2d 216, 231, 616 P.2d 628, 637 (1980), and discussion in part II B, *infra.*

in a theater or museum. *See Seattle v. Buchanan, supra* at 616 (Horowitz, J., dissenting). Our obscenity standards (however difficult of application) have been established to provide a uniform methodology for determining if depictions or descriptions of sexual conduct are protected by the First Amendment. They are equally appropriate in analyzing regulation of sexual conduct that is expressive, when the State has articulated no additional interests that might affect the balance. Thus, the proscribed conduct here "must be considered as a part of the whole work." *Erznoznik v. Jacksonville,* 422 U.S. 205, 211 n.7, 45 L. Ed. 2d 125, 95 S. Ct. 2268 (1975), citing *Miller v. California,* 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607 (1973). Many courts have so held. *See Birkenshaw v. Haley,* 409 F. Supp. 13 (E.D. Mich. 1974); *State v. Walker,* 568 P.2d 286 (Okla. Crim. App. 1977); *Dominguez v. Tulsa,* 539 P.2d 758 (Okla. Crim. App. 1975). *See also* Finer & Grant, *Regulation and Prohibition of Sensual Performances Under Nonobscenity Statutes,* 10 Crim. L. Bull. 717 (1974). *Cf. Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 43 L. Ed. 2d 448, 95 S. Ct. 1239 (1975) (district court found the play "Hair" obscene under state statutes, but Supreme Court did not reach issue in deciding the case on prior restraint grounds).

In sum, appellants' claim that their activity was not obscene and that their activity was within the ordinance's exemption are one and the same claims. It cannot fairly be said, as the majority contends, that appellants' exemption claim was raised for the first time on appeal since that claim is the same as appellants' allegation at trial that their activity was not obscene.[10]

---

[10]While refusing to reach the question of the trial court's refusal to permit appellants to present evidence that their activity was communicative and within the ordinance's exemption provision, the majority nevertheless comments in dicta that such a claim would at any rate be baseless since the trial court found that the performances did not take place in a theater. Neither the municipal nor the Superior Court made such a finding. Although each court stated the activity in question occurred on a bed, neither court found that the bed was not a theater. Such a finding is a mere extrapolation by the majority. Its statement that "The lower court's finding that the Temple is not a theater is supported by substantial

## B

Even if I were to ignore the above discussion and were to agree with the majority that appellants raise their exemption claim for the first time on appeal, the majority's decision not to consider appellants' claim is against the weight of our decisions regarding claims raised for the first time on appeal.

Appellants claim that the trial court's refusal of evidence as to the communicative nature of their activity denied them the constitutional right to show their activity was protected by the First Amendment and within the ordinance's exemption for dramatic or artistic performances.

In addition, appellants argue that it was the prosecution's duty to prove beyond a reasonable doubt that appellants' activity was not within the ordinance's exemption for dramatic or artistic performances. Clearly, the prosecution must prove every element of an offense beyond a reasonable doubt. *See Sandstrom v. Montana,* 442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450 (1979); *Mullaney v. Wilbur,* 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881 (1975); *State v. Hanton,* 94 Wn.2d 129, 614 P.2d 1280 (1980). Section 12A.02.130(C) of the Seattle Criminal Code states "A defense is affirmative, within the meaning of subsection B1 when it arises under a section of this subtitle *which so provides.*" (Italics mine.) *See Seattle v. Shepherd,* 93 Wn.2d 861, 613 P.2d 1158 (1980). The Seattle lewd conduct ordinance, SCC 12A.10.070 does not state that its exemption provision is an affirmative defense. As such, the prose-

evidence" is actually a finding of fact by the majority itself. Not only is the majority not authorized to make such a finding, it lacked the evidence to do so. Since the trial court barred evidence on precisely this issue, a finding of fact— even if it had been made by the trial court—would be of no weight or consequence on review. Finally, and more fundamentally, the question of whether or not appellants' conduct took place in a theater should not be dispositive of an obscenity determination. A theater is neither the exclusive province of nonobscene protected activity nor does it shield obscene conduct from legislative regulation. By dictating that the work must be judged "as a whole," the obscenity standards indicate that the place where the performance occurs is only one of many factors that contribute to an obscenity determination.

cution had the burden of proving appellants' activity was not within the ordinance's exemption provision. The prosecution's failure to so prove, and the trial court's failure to permit appellants to go forward with evidence intended to prove appellants were within the ordinance's exemption, appears to have denied appellants due process.

Thus, with respect to the question of whether appellants are within the ordinance's exemption, appellants claim not only a loss of First Amendment rights but of due process rights. Where a litigant raises a constitutional issue for the first time on appeal, we have held that we will hear that constitutional claim. *State v. Green,* 94 Wn.2d 216, 231, 616 P.2d 628 (1980). The majority's refusal to consider appellants' claim that their activity was within the ordinance's exemption for artistic or dramatic performances is thus baseless.

### Body Studio Ordinance

The majority holds that Seattle's body studio ordinance, SCC 12A.10.080, is not unconstitutionally overbroad.[11] Although the majority concedes that "[t]he language of the body studio ordinance does not limit its reach", it adopts the municipal court's saving construction of the ordinance, to the effect:

> No reasonable person reading the terms "body painting studio", "model studio", "sensitivity awareness studio", and "paint, massage, feel, handle, or touch the unclothed body" could conclude that it related to a dramatic production. Many plays and ballet performances involve much touching but the drama and the dance are central to the performance. The touching is incidental. "The statute must be given a reasonable construction to avoid absurd consequences", State v. Cann, 92 Wn. 2d 193 (1979).

The majority's adoption of this narrowing construction is misconceived both as to the appropriateness of a narrowing construction in this case and as to the scope of that con-

---

[11]The ordinance is set out in full on page 61, footnote 2 of the majority opinion.

struction once made.

I

As an initial matter, the majority cannot mean to adopt the municipal court's conclusion that "by its own terms" the ordinance "does not apply to any protected expression." Since the majority states the language of the ordinance "does not limit its reach," the ordinance is unconstitutionally overbroad "by its own terms." The majority must mean only that a reasonable inference from the terms of the ordinance will save it from unconstitutional overbreadth. The question remains whether the limiting construction of the terms of the ordinance is a reasonable inference from its terms.

The majority's adopted construction attempts to narrow the ordinance in two ways. First, the construction states that "[n]o reasonable person reading the terms 'body painting studio', 'model studio', 'sensitivity awareness studio', and 'paint, massage, feel, handle, or touch the unclothed body' could conclude that it related to a dramatic production." While that assertion may be true, the ordinance makes clear that a body studio is "any premises . . . upon which is furnished for . . . consideration the opportunity to . . . observe, view or photograph . . . paint[ing], massag[ing], feel[ing], handl[ing], or touch[ing] the unclothed body or an unclothed portion of the body of another person . . ." SCC 12A.10.080(A). The terms "body painting studio", "model studio", and "sensitivity awareness studio" are not, as the municipal court construction implies, requisite to the definition of a body studio.[12] Since the terms are unnecessary to the definition, they do not help narrow the scope of the definition. Under the express terms of the ordinance, viewing for consideration the

---

[12] In discussing these terms, the ordinance uses the conjunctive "and shall include", which does not restrict but only adds to the scope of the ordinance. As an example, "Temple of Venus" is not even similar to the titles enumerated in the ordinance, but the City argues here that the Temple is nevertheless within the intended reach of the ordinance because people could view for consideration the touching of human bodies on the Temple's premises.

touching of an unclothed portion of a person's body makes the premises where such events occur a "body studio."

While a reasonable person might not assimilate the term "body studio" with a place for dramatic performances, the phrase is entirely a creature of the ordinance and gains definition solely from the terms of the ordinance. The ordinance defines "body studio", *inter alia,* as premises where one can view for consideration the touching of an unclothed portion of the body. The question the majority does not address is whether a reasonable person might assimilate *that* definition with a place for dramatic performances.

## II

The majority's adopted construction goes on, however, and purports to narrow the scope of the ordinance's broad definition, discussed above. The construction focuses on the distinction that in a dramatic or artistic performance the drama or art "is central" while the "touching is incidental," and that the ordinance is not intended to regulate incidental touching. The ordinance makes no reference at all to this central/incidental distinction; we must assume the majority is imposing this saving construction on the ordinance's definition of "body studio" so to avoid the proscription of constitutionally protected expression. But from whence does the distinction the majority embraces emanate? By what authority does the central/incidental distinction arise? Is it a workable standard? And above all, is it constitutional? The majority answers none of these questions.

In *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 45 L. Ed. 2d 648, 95 S. Ct. 2561 (1975), the Court found unconstitutionally overbroad a local ordinance banning topless entertainment. In *Seattle v. Buchanan,* 90 Wn.2d 584, 598, 584 P.2d 918 (1978), we cited *Doran* with seeming approval in stating: "The ordinance under consideration there made no allowance at all for artistic performances. For this reason, the Supreme Court found it overbroad." Distinguishing Seattle's lewd conduct ordinance from the ordinance in

*Doran,* we went on to state:

> Since the ordinance here specifically makes allowance for artistic performances in appropriate establishments, it is not open to the criticism which caused the court to strike down the ordinance in *Doran v. Salem Inn, Inc., supra.*

*Buchanan,* at 600.

The majority's construction here attempts to remedy the absence of a dramatic or artistic performance exemption in the body studio ordinance through its central/incidental distinction. Artistic or dramatic performances are exempted by the body studio ordinance, so the argument proceeds, because the ordinance does not contemplate regulation of premises where the "touching is incidental." Following the majority's inventive narrowing construction, why could have not the Court in *Doran* narrowly construed the ordinance there to exclude topless performances where the toplessness was "incidental" to the performance? While the United States Supreme Court certainly had the inherent power to provide such a narrowing construction, it declined to do so. I might conjecture the *Doran* Court declined to make such a narrowing construction "perhaps because a rewriting of the ordinance would be necessary to reach that result." *Erznoznik,* at 216 n.15.

Even if I were to assume that a narrowing construction is appropriate here, the central/incidental distinction which is the basis for the majority's narrowing construction does not narrow the scope of the ordinance in a constitutional manner. The majority's construction of the body studio ordinance provides an exemption for fewer activities than does the lewd conduct ordinance since the lewd conduct ordinance does not require that the drama or art be central to the performance. Yet, just as the exception to Seattle's lewd conduct ordinance must be read in light of our obscenity standards (see discussion *supra* in part II A), so any judicially created exception to the body studio ordinance must be read in light of those standards. While the central/incidental distinction may be a factor in the

obscenity balance, it does not define that balance.

Thus, not only is the majority's narrowing construction uncontemplated by the terms of the body studio ordinance, the scope of the construction is not narrow enough to pass constitutional muster. No regulation that by its own terms controls expression protected by the First Amendment can be saved by the central/incidental distinction the majority proffers through its adoption of the municipal court's construction. Without demonstrating a compelling interest different from the State's interest in regulating obscenity, the City of Seattle may not regulate more restrictively than would be permitted by application of the State's obscenity statute, where the conduct regulated is communicative and implicates the First Amendment.